*PIGGOT v. MASON. [*412]

A covenant on the part of the lessor to renew a lease for years at the expiration of the term, is a covenant running with the land.

A surrender and conveyance to the lessor of a sub-lease of part of the premises, is no bar to a claim on the part of the lessee or his assigns for a renewal of the original lease agreeable to the covenant.

The holder of the original lease is not entitled to a covenant for renewal in the new lease, as that would create a perpetuity.

ON the first of November, 1802, Joel Evans leased to James Cross a piece of land in the city of New York for the term of twenty years and six months, at a quarter yearly rent. The lessor covenanted with the lessee and his assigns that he or they might, at any time within thirty days after the expiration of the lease, remove from the premises all buildings erected thereon during the said term. Evans also covenanted with the lessee to renew the lease at the expiration of the term, at a fair valuation, by persons indifferently chosen between the parties. In 1803, all the interest of Cross in the premises was sold on an execution, and conveyed by the sheriff to Stevens. In 1804, the right of Stevens was sold and conveyed to J. Drennan. In May, 1805, Drennan sold the premises to T. Garniss and W. H. Pyke, who divided the premises into three lots. They leased No. 3 to J. W. Griffiths and C. Green for the residue of the term, at a yearly rent of $42 50, and the lessees covenanted to surrender up the premises on the last day of the term. Garniss and Pyke covenanted to pay them for their

1829

Piggot
v.
Mason.

Feb. 17th.

1829.

Piggot
v.
Mason.

[*413]

improvements and buildings on the last day of the term, or to suffer the lessees to take them off within thirty days thereafter. They also covenanted, that if they obtained a new lease of the premises at the expiration of the term, they would assign to Griffiths and Green, on the same rent and conditions upon which they should receive such lease. In July of the same year, lot No. 2 was leased by Garniss and Pyke to J. Spies upon the same terms. In 1811, Pyke sold and assigned to Garniss all his interest in the undivided half of the premises. Two years afterwards, Garniss sold and assigned all his interest in the *whole of the leasehold premises to the complainant, and delivered over to him the original lease, with all the intermediate assignments and sub-leases.

In 1821, the defendant became the owner of the reversion and of all the interest which Evans formerly had in the premises, subject to the rights claimed under the lease. After this purchase, the complainant paid to the defendant the rent for the original lease to the end of the term. The defendant endeavored to purchase in the outstanding claims under the original lease, but the parties could not agree as to the terms. A few days before the expiration of the term, the defendant procured from the executrix of Spies a surrender of his sub-lease and a conveyance of all her interest in the premises; which surrender and conveyance, he now insists, is a complete bar to the complainant's claim for a renewal of the original lease.

The bill and answer set out various negotiations between the parties as to the mode of fixing a rent on renewal of the lease, and the persons to be selected for that purpose, which have no bearing on the merits. The cause was heard upon the pleadings and a statement of facts agreed upon by the parties.

*R. Bogardus*, for the complainant :—The only question in this case is, whether the purchase by the defendant of the sub-lease of a part of the demised premises, is a bar to

the complainant's claim to a renewal of the original lease. At the time the original lease was given, it must have been expected by the parties that the premises would be divided by the lessee, and sub-leased to different persons. The doctrine cannot be sanctioned, that the act of the reversioner in purchasing the interest of one sub-lessee, should take away the right to a renewal of the original lease. The injury that would result to the tenant by a refusal to· perform the covenant for a renewal, is the consideration for the execution of a new lease. Not only the covenantor but also his assignees are bound by the covenant of renewal.

*P. A. Jay* and *W. Slosson* for the defendant:—The sub-leases by the complainant, although in form leases, were in fact assignments of all their interest in that part of the demised \*premises so sub-leased. There cannot be a lease without a reversion in the lessor. The covenant of renewal contained in the original lease is not devisable. The landlord cannot be compelled to cut up his lands into several parts, by executing several new leases. The covenant is for a renewal of the lease as to the entire whole and not of a part of the demised premises. The covenant is also too vague for a decree of specific performance. No mode is pointed out to ascertain the amount of the new rent, or the time for which the new lease is to run. The Chancellor must make a new contract, in order to render effectual a decree for specific performance. (*Spencer's Case*, 5 Coke's R. 16 a; 1 Saun. R. 287, c. note 16; *Dumpor's Case*, 4 Coke's R. 119, 120; 3 Com. Dig. 128, tit. *Condition*, c. 2; *Soprani* v. *Skurro*, Yelverton's R. 19.)

THE CHANCELLOR :—The objection that the covenant to renew contained in the original lease was personal, and did not pass by the assignment of the lease, cannot be sustained. It was a covenant running with the land, and passed to the complainant by the several mesne assignments of the term. It is well settled, even at law, that the

[*414]

assignee may recover in his own name for a breach of such a covenant, if the breach was committed after the assignment. (*Lamette* v. *Anderson*, 6 Cowen, 302; *Withey* v. *Mumford*, 5 id. 137; *Kane* v. *Sanger*, 14 John. R. 89; *Grescot* v. *Green*, 1 Salk. 199.) And it lies either for or against an assignee, although he is not named in the covenant.[1] (*Hyde* v. *The Dean and Canons of Windsor*, Cro. Eliz. 552.) The assignee of a part of the premises may also recover *pro tanto*, if the covenant be in its nature divisible.[2] (Touchstone, 199; Co. Litt. 385 a.) A case is mentioned by Gawdy, (Moor, 159,) very similar to this. The lessor of a term for years covenanted to renew at the end of the term, and afterwards granted the reversion; and the assignee of the lease was permitted to maintain an action in his own name for a breach of the covenant against the assignee of the reversion.

If the defendant in this case had obtained an advantage by procuring the surrender and conveyance of the sub-lease to Spies, as he obtained it with full knowledge of the complainant's *rights, this court would not permit him to retain such advantage. But such is not the fact. The leases to Griffiths and Green and to Spies were strictly sub-leases, and did not convey to them all the interest of the lessors in those particular portions of the premises. The lessors retained an interest in those portions of the premises by the new rent reserved to themselves. They did not give to the sub-lessees an absolute right to take off the buildings which they should afterwards erect. If buildings had been previously erected, the absolute right to them at the expiration of the term belonged to the complainant, if the lessees did not think proper to take new sub-leases; and the right of the complainant to take the

[*415]

---

[1] But a covenant in a lease which relates to a thing not *in esse*, but to be done upon the land, does not run with the land so as to bind the assignee, unless he be named in the covenant. *Tallman* v. *Coffin*, 2 Comst. 134.

[2] *Astor* v. *Miller*, 2 Paige, 68.

renewal of the original lease in his own name is evidently reserved in the sub-leases.

The defendant is therefore bound to give to the plaintiff a new lease of the whole premises, and he will then be entitled to a renewal of the sub-lease for lot No. 2, on the terms and conditions specified in the lease to Spies.

As the parties cannot agree upon persons to fix the value of the rent to be inserted in the new lease, it may be fixed under the direction of the court; and the proper sum to be inserted must be ascertained by the report of a master. The other conditions of the lease are sufficiently ascertained by the one originally granted. The new lease must be for a similar term, and with the like covenants and conditions inserted therein, except the covenant for renewal, which the complainant is not entitled to have inserted in the new lease, as that would, in effect, create a perpetuity.[1] (*Fritton* v. *Foot*, 2 Bro. Ch. R. 636; *Hyde* v. *Skinner*, 2 P. Wms. 196.) The amount of the rent to be inserted in the new lease must be estimated in reference to the value of the land in May, 1823, without taking into consideration any buildings or improvements made thereon by the original lessee or those who succeeded him in the occupation of the premises.

It would be for the interest of all parties if the defendant should give to the complainant, or to him and Griffith separately, a new lease or leases of lots No. 1 and 3 only, and retain No. 2 himself, with a proportionate reduction of the rent. The amount of the rent may be fixed by \*three freeholders, to be selected by such master as may be agreed on by the parties or designated by the court. If the defendant consents to that arrangement, a decree will be entered accordingly, and without costs to either party. Otherwise there must be a decree for a specific performance of the covenant of renewal contained in the original lease, with a

[*416]

---

[1] *Carr* v. *Ellison*, 20 Wen. 178; see also *Abeel* v. *Radcliffe*, 13 John. 297; but see *Bridges* v. *Hitchcock*, 5 Brown's P. C. 6. A covenant to renew on such terms as might be agreed on, is void for uncertainty. *Whitlock* v. *Duffield*, 110; S. C., 26 Wen. 55.

provision therein for the execution of a sub-lease to the defendant for lot No. 2, and a reference to a master to settle the form of the lease and sub-lease, and fix the amount of rent to be reserved in each. And that the question of costs, and all other questions and directions be reserved until the coming in of the report of the master.