DAVID W. BRUCE et al., Executors, etc., Appellants, *v.* THE FULTON NATIONAL BANK OF THE CITY OF · NEW YORK, Respondent.

From the words of an express covenant, an additional or correlative covenant may be implied, if the language used shows that such covenant was intended; but such implication cannot be permitted where it is apparent from the contract that the parties had the subject in mind, and either one has withheld a promise in regard to it.

A lease under seal, drawn technically in form, and with obvious attention to details, contained various covenants, some binding the parties mutually, some the lessor only, others the lessee. It contained a covenant, on the part of the lessor, to the effect that if the lessee should pay the rents, and perform all the covenants on his part, that the lessee " shall and will at the end or expiration of the term," grant to the lessee a new lease for a further term specified, at a rent to be adjusted by appraisers, but not less than that for the first term. In an action to compel the lessee to accept a new lease, *held,* that this was a covenant, on the part of the lessor only, from which no covenant, on the part of the lessee, to take a new lease, could be implied; and that it was optional with him, whether or not, to take a new lease.

*Johnson* v. *Conger* (14 Abb. Pr., 195); *Pordage* v. *Cole* (1 Williams' Saunders, 319); *Butler* v. *Thompson* (2 Otto [92 U. S.], 412), distinguished.

(Argued November 21, 1879; decided December 9, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, reversing a judgment in favor of plaintiffs, entered upon a decision of the court, on trial at Special Term, and ordering a new trial. (Mem. of decision below, 16 Hun, 615.)

This action was brought to· compel defendant, as lessee of certain premises in the city of New York, to accept a renewal of the lease for a further term.

The question was simply as to the construction of the lease, of which the following is a copy:

" This indenture, made the 28th day of February, in the year 1856, between Dorothea A. L. Wolfe, wife of John David Wolfe, and the said John David Wolfe of the first

part and Joseph Kernochan, president of the Fulton Bank, in the city of New York, pursuant to the statute in such case made and provided, receiving the term of years hereby granted, and acting and covenanting for and in behalf of the said the Fulton Bank, in the city of New York, of the second part. Witnesseth, that the said parties of the first part have letten, and by these presents do grant, demise and to farm let unto the said party of the second part all that certain lot, piece or parcel of land, with the messuage or tenement thereon, situated in the second ward of the city of New York, contained within the following bounds, to wit : Commencing at a point on the south-easterly side of Pearl street, distant eighteen feet six inches north-easterly from the most easterly corner of Pearl and Fulton streets ; running thence south-easterly on a straight line parallel with Fulton street, and through the center of the party-wall between the house on the lot hereby demised and the house on the lot next adjoining belonging to the Fulton Bank, in the city of New York, forty-eight feet two inches ; thence running north easterly in a straight line twenty-two feet to a point distant on the course next stated, forty-seven feet two inches south-easterly from the south-easterly side of Pearl street ; running thence north-westerly on a straight line forty-seven feet two inches to a point on the south-easterly side of Pearl street, distant forty-nine feet north-easterly from the said most easterly corner of Pearl and Fulton streets ; running thence south-westerly along the south-easterly side of Pearl street thirty feet four inches to the point of beginning. To have and to hold the same unto the said party of the second part, and his successors and assigns, from the 1st day of May (at twelve o'clock at noon of that day), in the year 1856, for and during the full end and term of twenty-one years, yielding and paying for the same to the said Dorothea A. L. Wolfe, or to her heirs or assigns, the rent or sum of $1,600 yearly and every year during the said term, in equal quarter-yearly payments, to be made on the first day of every month of August, November, February and May in each and every

year during the time hereby demised. And it is agreed that if any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, that it shall be lawful for the said Dorothea A. L. Wolfe, her heirs or assigns, to re-enter the said premises and to remove all persons therefrom. And the said party of the second part, for himself, his successors or assigns, doth hereby covenant to pay to the said Dorothea A. L. Wolfe, her heirs or assigns the said yearly rent as herein specified; and also to pay all assessments ordinary and extraordinary; also all taxes that may be assessed, taxed, imposed or levied on said demised premises during said term. And the said parties of the first part, do hereby covenant and agree, that the said party of the second part, his successors or assigns, on paying the said yearly rent and performing the covenants and agreements herein contained, on the part and behalf of the said party of the second part, his successors or assigns, that the said party of the second part, his successors or assigns, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid. *And the said parties of the first part, do hereby covenant and agree, that if the said party of the second part, or their assigns, shall well and truly pay the rent hereby reserved, and keep and perform all the covenants herein contained, on the part and behalf of the said party of the second part, his successors or assigns, that the said Dorothea A. L. Wolfe, her heirs or assigns, shall and will, at the end or expiration of the term hereby granted, grant unto the said party of the second part, or his successors or assigns, a new lease of said premises hereby demised, for a further term of twenty-one years next ensuing, from the time of the expiration of the term hereby granted, at such annual rent (not less than the rent hereby reserved) as shall then have been agreed upon by the parties, or otherwise determined or ascertained as hereinafter provided.* And it is mutually covenanted and agreed between the parties hereto, that if the said Dorothea A. L. Wolfe, her heirs or assigns, and the said party of the

second part, his successors or assigns do not agree on the amount of rent to be reserved on said renewed lease, then the said Dorothea A. L. Wolfe, her heirs or assigns, shall nominate one fit and impartial person, and the said party of the second part, his successors or assigns, shall nominate one fit and impartial person, both of whom shall be owners of real estate in said city to value the fee-simple of said demised premises, said premises to be valued as vacant or unimproved land, said nominations to be made at least four months before the expiration of the term hereby granted, and if the persons so chosen shall differ in judgment as to the value of the said premises, the two so appointed shall appoint a fit and impartial person to be associated with them for that purpose, and the decision if any two of the three persons so chosen as to such value, shall be conclusive on the parties interested, and the interest at the rate of five per cent per annum on the value so estimated, shall be the annual rent to be reserved by said new lease, provided such rent is not less than the rent hereby reserved, the said new lease to contain the same covenants herein contained except the covenants to renew, and said new lease to contain a covenant on the part of said Dorothea A. L. Wolfe, her heirs or assigns, to renew the lease for another term of twenty-one years as hereinafter provided. And the said parties of the first part, do hereby covenant and agree, that if the said parties of the second, his successors and assigns, shall well and truly keep and perform all the covenants herein contained on his part, and truly pay the rent to be reserved in said renewed lease for the second term hereinbefore provided, and shall and will, keep and perform all the covenants contained in said new lease as herein provided, on the part and behalf of the said party hereto of the second part, his successors and assigns; the said Dorothea A. L. Wolfe, her heirs and assigns shall and will, at the end or expiration of the said second term, grant unto the said party of the second part, successors or assigns, a new lease of said premises hereby demised, for a further term of twenty-one

years next ensuing, from the time of the expiration of said second term at such annual rent (not less than the rent reserved for the term hereby granted) as shall then have been agreed upon by the parties or otherwise determined or ascertained as hereinafter provided. And it is mutually covenanted and agreed between the parties hereto, that if said Dorothea A. L. Wolfe, her heirs or assigns and the said party of the second part, his successors or assigns do not agree on the amount of rent to be reserved on said last renewal the amount of rent shall be ascertained and fixed at a sum not less than the rent hereby reserved, in the manner hereinbefore provided, with respect to the rent to be reserved on the first renewal of this lease. The said lease for the said third term of years to contain the same covenants as is herein contained except the covenant for renewal. It is further covenanted and agreed between the parties hereto, that in the event any part of the lot of land and premises hereby demised shall be taken for the purpose of the widening or extending of any street or avenue, or for a square or other public purpose at any time during the term hereby granted, or any term granted in renewal as hereinbefore provided, all awards for the ground or for the use of the ground so taken (exclusive of the building), shall inure and be paid to the said Dorothea A. L. Wolfe, her heirs and assigns, and after any part of said premises shall be so taken a deduction shall be made in the rent hereby reserved or reserved by any such renewed lease, such deduction amounting to a sum per annum equal to the interest at the rate of five per cent per annum on the amount received by or awarded to the said Dorothea A. L. Wolfe, her heirs or assigns, the said deduction to commence from the time said award shall be payable. It is further covenanted and agreed between the parties hereto that at least ninety days previous to the expiration of the last renewed or third term of twenty-one years, if said last term shall be granted in pursuance of the covenants and conditions herein contained, the lot of land hereby demised, or so much thereof

as shall not have been taken for any public purpose, shall be valued and appraised as a vacant lot by arbitrators appointed in the manner hereinbefore provided for on the renewal of this lease, and that the said party of the second part, or his successors acting for and in behalf of said the Fulton Bank, in the city of New York, or his or its assigns, shall purchase said lot at such its appraised value, and that the said Dorothea A. L. Wolfe, her heirs or assigns shall and will, at the expiration of said third or last term if granted as aforesaid sell, and on receiving such appraised value, grant and convey to the said party of the second part his successors or assigns the lot of land hereby demised in fee simple free from all liens or incumbrances, except such liens or incumbrances as the said party of the second part his successors or assigns may have suffered or permitted to be on said premises, or which by the covenants or agreements herein, or in any lease given in renewal hereof, the said party of the second part, his successors or assigns should have paid, removed or prevented. It is further covenanted and agreed between the parties hereto that the said party of the second part, his successors or assigns, shall have a right to remove the buildings now on said demised premises and to erect such other buildings and improvements thereon as he or they shall see fit, and that the contents and dimensions of the premises hereby demised are as the same are hereinbefore given and set forth, and said dimensions so given are by these presents established and agreed upon between the parties hereto as the true and correct boundaries and dimensions of said lot.

" In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

" DOROTHEA A. L. WOLFE.    [L. S.]
" JOHN DAVID WOLFE.    [L. S.]
" JOSEPH KERNOCHAN,    [L. S.]
     " President of the Fulton Bank."

A. P. Man, for appellants. While the express covenants in the lease leave no room for doubtful construction, yet if

the terms were less direct, and if the lease in form only bound the lessor to grant a renewal, the law would imply that the lessee was bound to accept it so long as no option was expressed. (*Mayor, etc.* v. *Mabie*, 13 N. Y., 151; *Johnson* v. *Conger*, 14 Abb., 195; Shepard's Touchstone, 53, 162; Co. Litt., 47 *b*; 1 Leon., 324; 1 Ch. Ca., 294; 2 Mod., 91; 1 Platt on Leases, 706; *Ld. Frankford* v. *Thorpe*, 2 Ball & B., 372; *Curry* v. *Stanley*, 1 H. & J., 487; *Butler* v. *Thomson*, 2 Otto [U. S.], 412; *Pordage* v. *Cole*, 1 Wm. Saunders, 319: *Hud. C Co.* v. *Penn. Coal Co.*, 8 Wall., 276.)

*S. P. Nash*, for respondent. It was error to imply a covenant to renew on the part of the lessees, such covenant not being contained in the lease. (1 R. S., 738, § 140; *Mayor* v. *Mabie*, 13 N. Y., 151; *Burr* v. *Stanton*, 43 id., 462, 464; *Vandekar* v. *Vandekar*, 11 J. R., 122; *Churchward* v. *Queen*, L. R. [1 Q. B.], 173; *Hud. C. Co.* v. *Penn. Coal Co.*, 8 Wall., 276; *Maryland* v. *R. R. Co.*, 22 Wall., 105, 112; *Booth* v. *Cl. R. M. Co.*, 74 N. Y., 15; *McIntyre* v. *Belcher*, 14 C. B. [N. S.], 104; *Aspdin* v. *Austin*, 5 Q. B. [48 E. C. L.], 671; *Justice* v. *Lang*, 52 N. Y., 323.)

DANFORTH, J. There is no foundation for the appellants' argument. The parties to the agreement bound themselves by express covenants under "hand and seal," and the defendant is not shown to have broken any one of them. This conclusion was also reached by the trial court, and by the General Term, but the first rendered judgment for the plaintiff on the ground that, from the words of certain express covenants on the part of the lessor, an additional or correlative covenant on the defendant's part might be implied, and this may be so if the language used shows clearly that such covenant was intended. (*Sampson* v. *Easterly*, 9 B. & C., 505; *Saltoun* v. *Houstoun*, 1 Bing., 433; *Earl of Shrewsbury* v. *Gould*, 2 B. & Ald., 487.) But this construction cannot be permitted when it is apparent that the parties have

themselves had the subject in mind and either one has withheld a promise in regard to it. That being so we can no more collect it from the words used than we can supply words, for in either case we should make the contract speak where the parties themselves were silent; and to do this the court has no power.

The agreement before us is very explicit. It was evidently prepared by a careful and experienced draftsman. Its subject is not new, nor is its form singular or unusual. It does not appear that anything was omitted which either party intended to provide for; "it is drawn technically in form, and with obvious attention to details," and in such a case "a covenant cannot be implied in the absence of language tending to a conclusion that the covenant sought to be set up was intended." (*Hudson Canal Co.* v. *Penn. Coal Co.*, 8 Wallace, 276.) This rule is cited with approbation by ALLEN, J., in the recent case of *Booth* v. *Cleveland Rolling Mill Co.* (74 N. Y., 15), and it applies to and must control the case before us.

We find in the agreement some covenants binding the parties mutually; others only the lessor, and others still the lessee,—expressed in apt words without ambiguity or confusion. There is first a lease. By it the plaintiffs' testator as lessor "doth grant, demise," etc., "to the party of the second part," the defendant, certain described premises "from 12 o'clock at noon of the 1st day of May, 1856, for the term of twenty-one years at the annual rent of $1,600 payable quarterly;" then a mutual covenant expressed by the words —"it is agreed," that in case of non-payment of rent when due, or default in other covenants, the lessor may re-enter, etc.; next — the party of the second part, the lessee, "for himself, his successors or assigns, doth covenant to pay" to the lessor the yearly rent, also all taxes assessed, etc., on the demised premises during the term; then — "the party of the first part doth covenant and agree that on paying the rent and performing the covenants and agreements" in the lease "contained on the part of the party

of the second part," he shall have quiet and peaceable possession of the premises during the term.

In all this there is no room for implication, and although from the word " demise " a covenant in law would be implied for quiet enjoyment, yet that covenant has been expressed. From the reservation of rent there is an implied covenant on the part of the lessee to pay the rent so reserved, yet a covenant to that end has been expressed; an omission to pay the rent, or a breach of any other covenant would warrant an entry by the lessor, yet it is mutually agreed that such shall be the effect of such omission.    Not only then have technical words been used from which covenants in law would arise, *Hayes* v. *Bickerstaff*, (Vaughan's R., p. 118), but, as if to avoid the possibility of misconstruction, the covenants have also been written out.    Following these provisions for a present lease, we find covenants in reference to a new or renewal lease, and on these the plaintiff rests his cause of action, viz. : "And the said parties of the first part do hereby covenant and agree that if the said party of the second part or his assigns shall well and truly pay the rent hereby reserved and keep and perform all the covenants herein contained on the part and behalf of the said party of the second part his successors or assigns, that the said Dorothea A. L. Wolfe " (party of the first part), "her heirs or assigns shall and will at the end or expiration of the term hereby granted, grant unto the said party of the second part a new lease of said premises for a further term of twenty-one years next ensuing from the time of the expiration of the term hereby granted, at such annual rent (not less than the rent hereby reserved) as shall then have been agreed upon by the parties or otherwise determined or ascertained as hereinafter provided."    It is very plain that here is a covenant by the lessor only,— an agreement by her to give a new lease.    There is none by the lessee to accept it.    If we consider it in connection with the covenants which have preceded it, we see that it thus expresses the whole intention of the parties, for such is their language.    It declares a covenant on the part of one to do an act.    If it

had been intended to bind both, or to impose a correlative obligation on the other, we should expect a clear statement to the effect, not only that one would give, but that the other would take a lease, or the use of words from which such an agreement must necessarily have been implied. It is not a present grant accepted by the other party, but a conditional promise or covenant to grant in the future a further term. It may be regarded as an offer for the benefit of the lessee, or as an inducement to him to build upon or improve the premises, giving assurance that if he did so he should enjoy the fruits of his expenditure for a longer period. (*Abeel* v. *Radcliff*, 13 J. R., 298.) This view is strengthened by the concession made in the printed points of the appellants' counsel. He says : "The circumstances of the lessee were peculiar, and the terms of the lease were exactly adapted to them and to the wants of the bank. * * * The bank was about to erect a costly banking-house upon this lot and its own adjoining lot on Fulton street." The lessee therefore would require the privilege of renewal,— the lessor be indifferent to it. If the term ended, the lot with the bank building would revert to the lessor. (*Piggot* v. *Mason*, 1 Paige, 412–415.) There is nothing to indicate that the lessor was desirous of continuing the lease, nor that the option was not given to the lessee to induce him to accept the original lease and improve the property. Besides, the lessor is bound to give a new lease if it was understood that the lessee was bound to accept ; it would have been easier and more natural and in harmony with the structure of the other covenants regulating the engagements of the parties, to have entered at once into a lease for a longer period,— that this was not done would, of itself, warrant the conclusion that such result was not intended except at the option of the lessee. The learned counsel for the appellants, however, insists that the subsequent covenants relating to the adjustment of rent by appraisers bind both parties ; and this is so to a certain extent. They bind the lessor provided the rent is fixed "at a sum not less" than that for the first term, and

they bind the lessee absolutely. Here the option is with the lessor. He is not bound to accept a rent less than $1,600. The lessee is bound, if he goes before the arbitrators to abide by and perform their award. But there can be no arbitration until the lessor is called upon to give a new or renewal lease. When this event happens it may be that both parties become bound, but it is not necessary to decide that question,— it is enough that there can be no arbitration if there is no acceptance of a new lease, and no obligation to accept it can be implied from the subsequent provisions, for we have seen that there is an express covenant concerning it, binding on the lessor alone and excluding the idea that the lessee is bound, and in such a case a covenant cannot be implied.

As we look further into the agreement we find other reasons for this construction of the covenants of the respective parties. There follows in substantially the same words as before, another covenant on the part of the lessor, for another, or second, renewal lease for twenty-one years, if the lessee pays his rent and performs his covenants, at such annual rent (not less than the rent reserved for the term of the first renewal) as shall have been agreed upon or otherwise determined as in the lease provided. Next—"it is further covenanted and agreed between the parties hereto, that at least ninety days previous to the last expiration of the last renewed or third term of twenty-one years, if said last term shall be granted," the demised premises shall be valued and appraised as a vacant lot by arbitrators "and the party of the second part shall purchase the lot at its appraised value," and "the said Dorothea A. L. Wolfe will, on receiving such appraised value, grant and convey to the party of the second part the said land in fee simple." There is nothing left for implication here; on the contrary there is a mutual covenant that the party of the second part will buy, and that the party of the first part will sell; so that we have throughout the instrument clearly and explicitly expressed the covenants and obligations of the several parties, and we may say of

this contract as was said concerning a statute in *Edrich's Case.* " The several inditing and framing of the different branches doth argue that the maker did intend a difference of the purview remedies." *Edrich's Case* (pt. 5, fol. 118, 3 Coke's R.). From the different language used in the various covenants it is evident that the omission of words which would impose or indicate a mutual covenant was intentional, for it is apparent that the parties knew how to use terms applicable to the subject. It would therefore be a perversion of the plain reading of the agreement to impose upon the lessee the obligation which is assumed to lie at the foundation of this action, and it could only be done by a disregard of well settled principles of law. In *Churchward* v. *The Queen* (Law R. [1 Q. B.], 173), the court refused to interpolate the obligation sought to be implied, Lord COCK-BURN saying " the court should take great care not to make the contract speak where it was intentionally silent ; and above all, that they do not make it speak entirely contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties ;" and to the same effect *Hudson Canal Co.* v. *Penn. Coal Co.* (8 Wall., 276); *Maryland* v. *Railroad Co.* (22 id., 105); *Booth* v. *Cleveland Rolling Mill Co.* (74 N. Y., 15). A lease similar to the one in question came before the chancellor in 1829, and while the precise point now in hand was not presented, it is evident he regarded it optional with the lessee to renew. (*Piggot* v. *Mason*, 1 Paige, 412–415.) We have not overlooked the authorities referred to by the learned counsel for the appellant. They do not seem to us in point. In *Johnson* v. *Conger* (14 Abbott, 195), the action was for a renewal by the tenant against the landlord. The latter was clearly bound and upon sufficient consideration. The tenant elected to have the obligation fulfilled. Whether, except for that election, the lessee would have been bound, was not in question. In *Pordage* v. *Cole* (1 Williams' Saunders, 319 *i*), the decision rests on the word " agreed," which was said to be " the word of both parties," and so both were bound, but, say the court,

" it might be otherwise if the speciality had been the words of the defendant only and not the words of both parties." In *Butler* v. *Thomson* (2 Otto, 412), the words were also the words of buyer and seller. Neither case has therefore any application to the present where the covenant is in terms the covenant of one only. Nor do those cases aid the appellants which hold that any words in a deed showing an agreement to do a thing make a covenant (Com. Dig. Covenant, A., 2; Vaughn's R., 118; Rawle on Covenants, 365; Shepherd's Touchstone, 162; 1 Platt on Leases, 706, and cases there cited; *Curry* v. *Stanley*, Hayes & Jones, 487) for the very point is against them in that, there are here no words to that effect. If the agreement was mutual throughout, the principle of these decisions and especially *Pordage* v. *Cole* would sustain the appellants and we could then hold with the learned judge at Special Term "that what one party agreed to do, the other assented to and concurred in;" but if the construction already given by us to the agreement is correct, such is not its character. It is very probable that both parties contemplated that the bank would find it desirable and for its interest to continue business upon the demised premises for a term longer than that of the original lease, and if so they would desire the "right" or "privilege" or "option" of a renewal, but we can find no express covenant or anything from which a covenant can be implied that they would remain or accept a renewal of the lease. We think, therefore, that the case was properly disposed of by the General Term and that its order should be affirmed, and judgment absolute ordered for the defendant.

All concur.

Order affirmed and judgment accordingly.