with costs, with leave to the plaintiff to plead over within 20 days, on the payment of costs in this court and in the court below.

O'BRIEN and McLAUGHLIN, JJ., concur.

PATTERSON, J. (dissenting). Mr. Justice HATCH, in his opinion in this case, has fairly stated what to my mind is the determinant consideration therein, and that is, whether the provision of the contract that the contractor shall be responsible for all damages which may be done to abutting property or buildings or structures by the method in which the construction shall be done, not including damage necessarily arising from proper construction or reasonable use, occupation, or obstruction of the streets, is a separate and independent provision, dissociated from any duty resting upon the city, and having for its sole purpose the security and indemnity of abutting property owners. If this is not an independent provision, then the views expressed by Mr. Justice HATCH are conclusive; but in my judgment it is independent, and provides for conditions and situations entirely different from any others contained in the contract, relating solely to the indemnity of the city. It seems to me that the provision in question is one which the contractor entered into for the benefit of third parties as one of the terms and conditions upon which the rapid transit commissioners awarded the contract to him. He was contracting for himself, and the question is not one of the relation of independent contractors to the work, nor of trespasses committed by them; for the defendant is the principal contractor, and all the obligations of that contract devolved upon him. As I look at it, upon all the facts set forth in the complaint in this action, it is not a question of the liability of the city at all, but of the liability assumed by the defendant as a condition of his contract, not in indemnification of the city, but upon an original undertaking of his, pursuant to a requirement of the rapid transit commissioners, who had the right to exact it from him for the protection of the owners of property abutting upon the line of the subway.

Entertaining these views, I am unable to concur in the conclusion reached by my associates.

---

(43 Misc. Rep. 429.)

NEW YORK PELTON FLOOR CO. v. TUCKER & VINTON.

(Supreme Court, Trial Term, New York County. March, 1904.)

1. SALES—CONTRACT—CONSTRUCTION.

A contract between plaintiff and defendant, in one of the clauses of which it was agreed that on the execution of a certain license to defendant by a patentee plaintiff would execute and deliver to defendant a bill of sale of all its personal property "then on hand" at plaintiff's factory on receiving from defendant a specified cash sum, is a mere option agreement; and hence does not bind defendant to pay the sum named on the execution of the license.

Action by the New York Pelton Floor Company against Tucker & Vinton, Incorporated, to recover the price of goods sold. Tried before the court without a jury. Complaint dismissed.

Phillips & Avery (Frank M. Avery, of counsel), for plaintiff.

Seymour, Seymour & Harmon (Frederick Seymour, of counsel), for defendant.

GIEGERICH, J.   Prior to August 2, 1901, the plaintiff held the exclusive license to use within the limits of Long Island and the city of New York, state of New York, and in the state of New Jersey, a certain patented floor construction, said license having been granted by the patentee, the Pelton Fireproof Construction Company.   On August 2, 1901, the defendant made a contract with the plaintiff, which contemplated the substitution of the defendant in place of the plaintiff as such licensee.   The fifth clause of this contract, and the clause upon which the present action is brought, is as follows:

"Fifth. The party of the second part further agrees that upon the execution of such license by the Pelton Fireproof Construction Company to the party of the first part hereto, to execute and deliver to the party of the first part a bill of sale granting and conveying to the party of the first part all the moulds, forms, tools, implements, raw and manufactured materials then on hand at the manufactory of the party of the second part in the Borough of Manhattan, New York City, except belting, shafting, pulleys and engine belonging to the landlord, upon receiving in·payment therefor from the party of the first part the sum of $3,000 in cash."

Subsequently, and on or about the 30th day of September, 1901, the said Pelton Fireproof Construction Company issued to the defendant the exclusive license as contemplated.   The plaintiff performed all of the conditions of the agreement on its part to be performed, and after the issuance of said license tendered to the defendant a bill of sale of the property mentioned in the fifth clause of the contract, above quoted, and demanded payment of the $3,000 agreed upon, but the defendant refused to accept the property or to pay the $3,000, or any part thereof.   Thereafter the plaintiff caused such property to be sold at public auction, the amount realized upon such sale being $50, and this action is brought for the difference, to wit, $2,950.   The gist of the controversy is whether the fifth clause, above quoted, is merely an option, to be exercised by the defendant if it so saw fit, or whether it is an agreement binding upon both parties.   In my opinion, the clause confers an option only, and does not bind the defendant to make the purchase.   One of the chief reasons for this conclusion is that the property contemplated is not definite and fixed, but, on the contrary, is such as may be on hand at a future time, namely, at the time of the execution of the anticipated license.   As a matter of fact, as will be seen by a comparison of the dates above given, the contract sued upon was made on August 2d, whereas the license contemplated was not issued until after September 30th, following.   That the parties to the contract had in mind that there would be an interval of greater or less duration is plain from the language of the clause.   The words "then on hand" plainly mean, not on hand at the time the contract was signed, but that might be on hand at a future date, to wit, upon the execution of the license.   There is no provision whatever which binds the plaintiff to have on hand at such future date the same amount of the property as was on hand at the date of the contract, or any amount; but, on the contrary, it was left perfectly free to diminish the amount

of such property to any extent it saw fit.  Under such circumstances, it would be very unreasonable to suppose that the defendant company intended to bind itself to pay a fixed price for whatever might be on hand and turned over to it at a future date.  This view is confirmed by other provisions of the contract, which is so drawn that the different clauses express the respective obligations and agreements of the two parties separately.  For example, the first clause begins with the words, "The party of the first part hereby agrees;" the second clause with the words, "The party of the first part shall pay;" and the fourth clause with the words, "The party of the first part hereby grants."  On the other hand, the fifth clause purports to contain a covenant of the second party alone.  Still other clauses do not purport to be the covenant of either party exclusively.  This circumstance strongly indicates that the contract, which bears every evidence of having been carefully drawn, was intended to show clearly by its terms just who was bound by its various provisions, and to leave nothing to implication.  In Bruce v. Fulton National Bank, 79 N. Y. 154, 35 Am. Rep. 505, an attempt was made to compel a lessee to accept a renewal of the lease under a covenant therein, which by its terms bound only the lessor to grant such renewal, and not the lessee to accept.  The court said, at page 161, 79 N. Y., page 505, 35 Am. Rep.:

"The agreement before us is very explicit.  It was evidently prepared by a careful and experienced draftsman.  Its subject is not new, nor is its form singular or unusual.  It does not appear that anything was omitted which either party intended to provide for.  'It is drawn technically in form, and with obvious attention to details,' and in such a case 'a covenant cannot be implied in the absence of language tending to a conclusion that the covenant sought to be set up was intended.'  Hudson Canal Co. v. Penn. Coal Co., 8 Wall. 276, 19 L. Ed. 349.  This rule is cited with approbation by Allen, J., in the recent case of Booth v. Cleveland Rolling Mill Co., 74 N. Y. 15, and it applies to and must control the case before us.  We find in the agreement some covenants binding the parties mutually; others only the lessor; and others still the lessee—expressed in apt words, without ambiguity or confusion."

This case is cited with approval in the recent decision in Zorkowski v. Astor, 156 N. Y. 393, 50 N. E. 983, where it was further said at page 398, 156 N. Y., page 985, 50 N. E.:

"A covenant will not be implied unless it clearly appears from the words used that one was intended.  Booth v. Cleveland Rolling Mill Co., 74 N. Y. 15; Hudson Canal Co. v. Penn. Coal Co., 8 Wall. 276, 19 L. Ed. 349.  When it is apparent that the parties had the subject in mind, and either has withheld an express promise in regard to it, one will not be implied."

The plaintiff relies upon Jugla v. Trouttet, 120 N. Y. 21, 23 N. E. 1066, and especially the statement in the opinion that, "when any act of the parties, or either of them, is essential to carry out the intention of the parties, appearing by the provisions of a contract, the stipulation for the performance of such act will be deemed within its provisions as effectually as if actually expressed."  This rule, of course, is undoubted.  The only question arises upon the application of it.  So far as that case applies, however, it is against this plaintiff, because the court refused to imply a covenant on the part of the plaintiffs there—manufacturers of gloves—to continue making and selling to the defendant under an agreement providing that, "so long as" the plaintiffs "continue to manufacture said gloves and to furnish the same to him,"

the defendant "will not purchase of any other person any gloves what-. ever of the same grades." It was held that the plaintiffs had not deprived themselves of the right at their pleasure to discontinue the production of gloves. Other cases relied upon by the plaintiff, such as Barton v. McLean, 5 Hill, 256, Richards v. Edick, 17 Barb. 263, and Frey v. Johnson, 22 How. Prac. 316, where covenants have been implied, are cases, as pointed out in Bruce v. Fulton National Bank, 16 Hun, 621, decided upon the peculiar phraseology of the contracts under adjudication, and in which the intention in regard to the particular covenant was not in dispute. There are some cases, also, in which a covenant has been implied in order to prevent a failure of the entire. contract for want of consideration to uphold it. In the present in-. stance, instead of there being ground for believing that the intention of the parties was that the covenant should have a broader application. than its terms denote, there is ground for believing, as above shown, that their intention was fully and exactly expressed. The improbability of a party agreeing to purchase at a fixed price an indeterminate. quantity of goods has been already adverted to. Against this the plaintiff advances the argument that the goods in question could have been of no use to the plaintiff, nor to any one else except the defendant, after the latter should receive the exclusive right to use the patented article, and therefore that it could not have been the intention of the plaintiff to place itself so completely in the hands of the defendant as to give the latter an option merely, and not bind it to purchase. In answer to this claim it may be observed, in the first place, that the molds and tools would be useful to others than the defendant, the latter having an exclusive right only within the territory of Long Island and New York City, state of New York, and in the state of New Jersey. Outside these limits these special appliances would be valuable to any one engaged in making the article. And even within these limits they might become valuable for the plaintiff's own use, in the event, provided for in the contract and pointed out below, that the license should re-. vest in the plaintiff. It should be noted, moreover, that the anticipated. sale of these appliances is not, by any means, the sole consideration flowing to the plaintiff. This circumstance differentiates the present case from those where there is but a single covenant, which must be. held mutual in order to establish any contract at all. Here the plaintiff as well as the patentee was to have from the defendant a royalty on each square foot of flooring laid under the license. There was also. a provision that the exclusive right to use the patented article should vest back in the plaintiff in the event that the payments of royalty did. not amount to certain minimum sums specified. It is further noticeable, and significant on the point of controversy, and indicative of the defendant's cautious and noncommittal attitude in the entire transaction, that even as to these minimum sums there was no agreement to pay unless the royalties amounted to such sums; the only penalty for nonpayment being that the reassignment of the license to the plaintiff should become effective in that event. The fact that the defendant so carefully refrained from committing itself unconditionally to paying any sums in excess of what the royalty would amount to at the agreed rate per square yard for the work actually done, corroborates the view.

that, in respect to the purchase of the appliances, there was the same avoidance of any engagement to make a greater outlay than the needs of the business might require.

Upon the whole case I am clearly of the opinion that there was no agreement to purchase on the part of the defendant, and that the complaint should be dismissed, with costs. Complaint dismissed, with costs.