## GRAVES *vs.* BERDAN.

When the estate out of which rent issues is gone, and the demised tenement has absolutely ceased to exist, the rent must terminate, and the obligation to pay it is at an end.

Where the plaintiff leased to the defendant certain rooms and passage ways in the basement, the ground story and on the second floor of a building, for a term of years, taking from the lessee a covenant to pay the rent, but not covenanting to rebuild; and the building was afterwards accidentally destroyed by fire, and no erection was substituted for it by the plaintiff of a height equal to the second floor of the former edifice, or upon that part of the ground which was covered by the stores occupied by the defendant; *it was held* that the lease was to be construed as a lease of apartments—of a portion of a building only—and that the destruction of such apartments constituted a good defense to an action upon the covenant, for rent subsequently accruing. S. B. STRONG, J., dissented.

APPEAL by the defendant from a judgment of the city court of Brooklyn. The action was brought to recover a quarter's rent claimed to be due upon a lease executed by the plaintiff to the defendant. The plaintiff had judgment for the amount claimed, with costs.

*E. H. Kimball,* for the appellant.

*D. C. & J. Winslow,* for the respondent.

EMOTT, J. The defendant hired of the plaintiff certain rooms and passage ways in, the basement, the ground story and on the second floor of a large building in Brooklyn, by a lease under seal for a term of five years from May 1, 1856. The same building was occupied by a number of other persons, to whom different apartments were separately let. The lease contained a covenant by the defendant, to pay the rent. The building was accidentally but completely destroyed by fire on the 6th day of May, 1857, and no erection has been substituted for it by the plaintiff of a height equal to the second floor of the former edifice, or upon that part of the

ground which was covered by the stores occupied by the defendant. Neither party covenanted to rebuild, but the present action is brought upon the covenant in the lease for the payment of rent. The defense interposed is the destruction of the building; and the question is, whether that is a good answer to the action.

The plaintiff contends for the application of the rule that where a party by his own express contract engages to do an act, any subsequent casualty, even though inevitable, or occasioned by what the law styles the act of God, will not relieve him from its performance, or from making the other party good, if performance becomes impossible. That is a rule well settled, and strictly adhered to in the common law. It is recognized, and the authorities in which it appears are adverted to in the recent case of *Harmony* v. *Bingham*, (2 *Kern.* 99, 107, 115.) There is no class of cases in which that rule has been applied with more strictness and occasional harshness than those of leases, and the rights of landlords to rent. Where there is an express covenant to pay rent, in a lease of lands, neither the destruction of buildings by fire, nor the inundation of the property by water, nor its occupation by the enemy, will exempt the party from his obligation. There is an unbroken series of decisions to this effect, commencing with *Paradine* v. *Jane*, (*Alleyn*, 26,) in which Justice Rolle, in an action of debt for rent, overruled a plea that the defendant had been excluded from the premises by the public enemies, to wit, Prince Rupert and his soldiers. That doctrine has been rigidly upheld. (2 *Strange*, 763. 2 *Ld. Raym.* 1477. 1 *T. R.* 310, 705. 3 *Burr.* 1638. 4 *Taunt.* 45.) In *Hallett* v. *Wylie*, (3 *John.* 44,) it was asserted by the supreme court in this state, and has never been departed from. Nor will a court of equity relieve against the payment of the rent, in such cases. (3 *Anst.* 687. 18 *Ves.* 115. 1 *Sim.* 146.)

But in all these cases, it is to be observed that the estate still continues, the thing demised exists, and the interest of

the lessee in it continues, although its value may have been diminished, or destroyed, or its enjoyment prevented. While this is the case, such a destruction or injury by the act of God, or any casualty, is not a defense to a positive contract to pay rent, on the plainest principles. Such an action is not an eviction, for it is not the act of the landlord, or of any one claiming under him, or by title paramount to his. Nor is it an excuse for non-performance of the tenant's agreement, because he has not made it so in his contract, but has entered into an express engagement without any such qualification, when he might have made it. Harsh as the rule may sometimes seem, it is founded upon legal principles, and it has been vindicated by considerations of public policy. (12 *M. & W.* 79. 3 *Kent's Com.* 467.)

But where the estate is gone, and the thing demised no longer exists, a different principle applies. In such a case no rent can any longer be recovered, and where such a state of facts is shown, it is a good answer to the landlord's action. I understand this distinction to be observed by Baron Parke, in his judgment, in the well considered case of *Hart* v. *Windsor*, (12 *M. & W.* 79,) and it is the basis of the decision of the vice chancellor in *Kerr* v. *The Merchants' Exchange Co.*, (3 *Edw. Ch. R.* 315,) and of that of the supreme court of Ohio, in *Hinton* v. *Cornish*, (5 *Ohio R.* 303.) The peculiar character of the payment which the defendant undertakes to make, in the present and similar cases, occasions a distinction between these and ordinary contracts. This is a covenant to pay rent, which is defined to be a certain profit issuing yearly out of lands and tenements corporeal, in retribution for their use. (2 *Comm.* 41. *Gilbert on Rents*, 9. *Co. Litt.* 142 *a.*) When, therefore, the estate out of which the rent issues is gone, and the tenement has absolutely ceased to exist, the rent must terminate. The case of *Izon* v. *Gorton* (5 *Bing. N. C.* 501) does not militate against this view. That was a case of a lease of apartments; the action was for their rent,

Graves *v.* Berdan.

and the defense was their injury or destruction by fire. But it will be seen, upon an examination of the facts, that the building was not destroyed, nor even that portion of it leased by the defendant. This remained in substantial integrity, and the injury at its greatest extent is only stated as a damage to such a degree as to render the rooms untenantable. They were immediately repaired and tendered to the defendant. It is obvious that on such a state of facts it could not be said that the premises or the estate had ceased to exist. In the case of *Kerr* v. *The Merchants' Exchange Co.*, Vice Chancellor McCoun says, that with the destruction of the premises, the lease itself, and all rights and interests under it, terminated. The facts in that case were analogous to the one at bar. The plaintiffs were tenants of apartments in the Merchants' Exchange at the time of its destruction by the great fire of December, 1835. When the company erected the new building which now occupies substantially the same site, the question arose whether the lease of the plaintiffs, with the term and interest which it created, was still in existence. It is true the question was presented to the vice chancellor by the tenants claiming apartments in the new building, equivalent to what they had in the old. But the principle upon which he disposes of the case goes equally to the rights of lessors and lessees. If the landlord had a right to insist upon the continuance of the rent, the tenants had a right to insist upon the enjoyment of apartments in the new building, in the same or an equivalent situation with those which they occupied before destruction of its predecessor. It could hardly be said that the landlord could erect a new building, perhaps upon a totally different plan, and exclude the tenants from any occupation or enjoyment of it, and yet insist upon the payment of rent. I agree with Vice Chancellor McCoun, that in cases of leases of apartments merely, such as that before him in the case to which I have adverted, and in the case now at bar, no inter-

est in the land passes, or rather, after the destruction of the buildings and apartments demised, no interest in the land remains. As long as the building stands, it is a part of the land, annexed to it, so that a contract for, or a demise of, a portion of the building is undoubtedly, in the eye of the law, a contract relating to that which is regarded as land by its annexation to the soil. This explains the application of the statute of frauds to such contracts, as in the cases cited by the plaintiff's counsel and others. That a cellar or an apartment in the first or fourth story of a buiding, a room in the edifice with a passage or right of way may be demised separately and nothing more pass, is clear from old authorities, as well as from the recent cases. (5 *Co.* 100. 1 *T. R.* 701.) Any other doctrine would be absurd in its application to buildings consisting of many floors or stories, one above the other, and separately demised. In such cases it is the rooms in the buildings which pass, and nothing more. It cannot be the ground under them, for that is common to all, or is occupied by the structure which supports all alike. How could this be said to belong to one more than another, or be divided among them all ? And it will not be said that the mere space of air above the ground passes by the lease, or that after the building is gone the tenant may assert his right to the space which his apartment occupied, in mid air, if he can reach it. The reasonable construction of such a lease as the present is, that it is a lease of apartments—of a portion of a building only. Therefore with the destruction of the building the estate and thing demised were destroyed, as what is literally and actually land never can be. With this destruction of the estate the tenement out of which the rent was to issue ceased, and the obligation to pay it was at an end. There was therefore no liability to pay the rent which would have accrued in August after the fire.

There are some other considerations which may have some force against the plaintiff's action, but I forbear to advert to

them, as, in the view which I take of the case, what I have already said, must dispose of it.

The judgment should be reversed, and a new trial in the city court ordered, the costs to abide the event.

BROWN, J. concurred.

S. B. STRONG, J. dissented.

Judgment reversed.

[KINGS GENERAL TERM, February 14, 1859. *S. B. Strong, Emott* and *Brown*, Justices.]