ANDREW SMITH, Respondent, *v.* THE RECTOR, WARDENS AND VESTRYMEN OF ST. PHILIP'S CHURCH OF THE CITY OF NEW YORK, Appellants.

A lease for a term of twenty-three years contained a covenant on the part of the lessee to build on the demised premises within six years from its date a building as specified, and in default of such erection it was declared that the estate granted should cease. If the building should be erected within the time specified and should be standing at the expiration of the the term, the lease provided that the lessors would, at their option, either grant a new lease for a further term, or pay the fair value of the dwelling; the rent for the new term or the value of the building to be determined by appraisers, one to be selected by each party. In case of default by either party in nominating an appraiser the one nominated by the other was to select the other. In case of the disagreement of the appraisers they were to appoint an umpire, the decision of the majority to be final. Before the expiration of the six years the lessor executed to S., assignee of the lessee, a release, which, after reciting the covenant to build, released S. therefrom, and declared that the lease should "in all its parts" thereafter be acted upon "the same as though such covenant had not been inserted therein;" also that the purpose of the release was

to exonerate S., his heirs and assigns from all obligation arising from or growing out of the covenant. Before expiration of the term S. did erect upon the premises a dwelling-house of the description specified in the lease. In an action to compel a specific performance by the lessors, *held*, that the release discharged S. from any obligation to build, and if at the expiration of the lease no building erected under and as authorized by the provisions of the lease had been standing on the premises, the defendant would neither have been bound to renew the lease or pay the value of any building But *held*, that the right to build during the term was preserved, and S., having availed himself of it, was entitled to the exercise by the defendant of the option either to pay the appraised value or to renew the lease

The lease contained a covenant on the part of the lessee or assigns, that he or they would not let all or any part of the premises, or assign or transfer the lease without first having obtained the consent of the lessors in writing. The building erected by S. was an apartment-house; he occupied one range of rooms, the others he let to tenants by the month by verbal lease. This was known by defendant, and for eight years after the erection it received rent from S. without objection. *Held*, that this was, in effect, a license to use and occupy the premises as an apartment-house, and estopped defendant from claiming a forfeiture of the lease, because of such use.

As to whether the consent by defendant to the assignment to plaintiff was not a waiver of the covenant *quære.*

The judgment authorized defendant to appoint an appraiser to act with one appointed by plaintiff, and in case of neglect so to do, provided that the appraiser named by plaintiff might select another to act with him in fixing the valuations and, when determined, required defendant either to pay the value of the building or execute a new lease. It was claimed here by defendant that an action for specific performance could not be maintained by plaintiff until after he had procured the valuation to be made in the manner specified in the lease. *Held*, that as the objection was not taken on the trial it was not available here.

Also, *held*, the rule that a court of equity will not entertain an action for specific performance of an agreement to arbitrate did not apply, as the judgment did not compel defendant to appoint an arbitrator, and the appraisers, when appointed, will be appraisers selected by the parties in precise accordance with their agreement.

Also, *held*, that defendant could not refuse to give a new lease and turn the plaintiff, for his remedy, to an action at law on the covenant.

But, *held*, this was not a case for an extra allowance under the Code of Civil Procedure (§ 3252).

Also, *held*, that the judgment should be modified by incorporating a provision for the appointment of an umpire in the contingency mentioned in the lease.

(Argued November 29, 1887; decided January 17, 1888.)

Appeal from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, entered upon an order made November 6, 1885, which affirmed a judgment in favor of plaintiff entered upon a decison of the court on trial without a jury.

This action was brought to compel a specific performance on the part of defendant as lessor of certain covenants in a lease executed by it to Thomas Kiernan.

The material portions thereof are set forth in the opinion, which also contains a substantial statement of the facts.

*Sidney S. Harris* for appellants. The plaintiff cannot maintain this action, because he failed to perform the condition precedent to his right to a new lease. (17 John. 405; 11 Hun, 211; Wood's Land. and T. 667; *Milnes* v. *Gery*, 14 Ves. 400; *Wilds* v. *Davis*, 3 Mer. 507; *Collins* v. *Collins*, 26 Beav. 306; *Vickers* v. *Vickers*, 5 Ch. [L. R.] 648; *Earl Dumly* v. *London*, 3 De. G. J. & S; 24; 2 H. L. [L. R.] 43; *Hopkins* v. *Gilman*, 22 Wis. 476; *People's Bank* v. *Mitchell*, 73 N. Y. 406.) The decree is erroneous in substance because it compels the appointment of an arbitrator by defendants; a court of equity will not compel the appointment of an arbitrator. (*Greason* v. *Keteltas*, 17 N. Y. 491; *Whitlock* v. *Duffield*, Hoffman Ch. R. 110; *Price* v. *Williams*, cited 6 Vesey, 818; *Tobey* v. *Co. of Bristol*, 3 Story, 800, 820, 823; *Robinson* v. *Keteltas*, 4 Edw. Ch. 67; *Street* v. *Rigby*, 6 Vesey, 815; *Noyes* v. *March*, 123 Mass. 286; *Connor* v. *Drake*, 1 Ohio St. 166; *King* v. *Howard*, 27 Mo. 21.) A decree of specific performance cannot be made to compel the execution of a lease where its terms are uncertain when the decree is made. (*Duffield* v. *Whitlock*, Hoff. Ch. R. 110; 49 N. Y. 499, 503, 505; Woods Land. and T. § 197.) The defendants are not obligated to give a new lease, as they have no longer the option to pay for the building. All obligation to give a new lease was dependent upon the alternative right or privilege to defendants of paying for the building erected under the lease, which no longer exists. (*Greason* v. *Keteltas*,

17 N. Y. 406; *Bruce* v. *Fulton Bank*, 79 id. 163; *Abeel* v. ————, 13 Johns. R. 298; *Finkelmier* v. *Bates*, 92 N. Y. 178; *Bleeker* v. *Smith*, 13 Wend. 530, 535; 24 Hun, 617; *Doe* v. *Bliss*, 4 Taunton, 735.) The under-letting was of the land, as well as of the apartments in the building, and the covenant against under-letting applied. (*Pearce* v. *Colden*, 8 Barb. 522; *Keer* v. *Merchants Exc.* 3 Edw. Ch. 315; *Winston* v. *Cornish*, 5 Ohio, 303; *Graves* v. *Berdan*, 29 Barb. 100, 103–104; *Timens* v. *Baker*, 49 L. T. [N. S.] 106; *Doe* v. *Worseley*, 1 Camp. 20; *Roe* v. *Sales*, 1 M. & S. 297; *Inman Stamp*, 1 Starkie, 12; 1 C. & J. 391; Brown on Stat. of Frauds, § 20; Addison on Conts. §§ 201, 719; *Kutter* v. *Smith*, 2 Wallace, 491.)

*Emile Beneville* for respondent. The purpose and effect of the release was to relieve the lessee, Smith, from the obligation to erect the building mentioned in the lease within the period of six years, and to extend the time for such erection, during the entire term of the lease. (*Burr* v. *American Spiral Spring Co.*, 81 N. Y. 175.) The intent of the parties as to what part of the lease should be affected by the execution of the release, being established, this intent should be permitted to prevail. (3 R. S. [7th ed.] 2205, § 2; *Coleman* v. *Reade*, 97 N. Y. 545.) By acquiring the right to occupy apartments in a house for a period of time, the tenant does not acquire any interest in the land on which the building in which his apartments may be situated is standing, and if this be the case the tenant of such apartments acquired by his lease no right or interest in the demised premises. *Keer* v. *Merchants Ex. Co.*, 3 Edw. Ch. 315; *Winston* v. *Cornish*, 5 Ohio Rep. 303; *Doe ex rel. Freeland* v. *Burt*, 1 T. R. 701.) The lease gives the right to sublet apartments in the buildings erected by the lessee, since it permits the erection of a dwelling or tenement house, the apartments whereof are specially destined to be sublet. (*Hare* v. *Horton*, 5 Barn. & Adol. 715; 2 Pars. on Cont. 516; *Trustees of Columbia College* v. *Thatcher*, 87 N. Y. 811.) Actual performance of an act, which is the

consideration of an agreement, supplies the place of a previous agreement, to perform such act. (*Beckwith* v. *Brackett,* 97 N. Y. 52.) Even if any technical formality in respect to the notice for a renewal had not been fully complied with by the respondent, equity would give relief. (*Reid* v. *St. John,* 2 Daly, 213 ; Story Eq. Jur. § 1319.)

Andrews, J. The true construction of the release executed by the defendant to the plaintiff, July 22, 1864, as bearing upon the covenant of renewal contained in the lease from the defendant to Thomas Kiernan, assignor of the plaintiff, dated July 1, 1862, constitutes one of the material questions in this case. The lease was for a term of twenty-three years ; it contained among other covenants by the lessee, a covenant for himself, his administrators and assigns, to erect and build, or cause to be erected and built, on the demised premises " within six years from the date of the lease, a good and substantial brick dwelling-house of at least four stories in height above the basement," and the covenant was followed by the provision that " in default of the erection of such dwelling-house these presents and the estate hereby granted shall thenceforth cease and be void." The lease then further declares in substance that it is mutually agreed between the parties that if the lessee, his executors, administrators or assigns shall, " within the time aforesaid " erect such dwelling-house, and the same shall be standing on the premises at the expiration of the term, and the lessee shall faithfully fulfill and perform all his other covenants in the lease, the lessors shall and will at the expiration of the term, " at their option," either grant a new lease for the further term of twenty years at such annual rent as shall be agreed upon by the parties, or otherwise settled and ascertained as provided in the lease, but not less than the rent reserved therein, or then pay the just and fair value of the dwelling-house, to be ascertained as provided. The lease further provides for the appointment of appraisers " to value such dwelling-house in its then actual condition (*i. e.*, at the time of the arbitration), and also to determine

what would be reasonable yearly rent for said lot during the next ensuing term of twenty years," each party to nominate one and to signify such nomination to the other at least one year before the expiration of the current term, and in default of such nomination by either party for thirty days after the time so limited, the nominee of the other party was authorized to associate with himself another person for the purpose of the valuation, and in case of the disagreement of the appraisers, they to appoint an umpire, the decision of the majority to be final and conclusive. The lease also prescribed that for the purpose of fixing the rent for the renewal term the lot should be considered and valued as vacant and unoccupied, and that five per cent on such estimated value should be the annual rent in case of renewal.

The lessee, on the 14th day of December, 1863, with the consent of the lessor, assigned the lease to the plaintiff. On the 22d of July, 1864, the defendant executed to the plaintiff a release under seal, which after reciting *in totidem verbis* the covenant of the lessee to build on the demised premises contained in the lease, and also the provision that the lease should be forfeited in case the house was not erected and built within the time specified, proceeds as follows : " Now this agreement witnesseth, that the said parties of the first part in consideration of the premises and of the sum of one dollar to them in hand paid, the receipt whereof is hereby acknowledged, hereby release and discharge the said Smith, his heirs and assigns, of and from the said covenant and agreement to build in said lease contained, and the said lease in all its parts shall hereafter be acted upon by the respective parties, the same as though such covenant had not been inserted therein, and all other parts of said lease shall be interpreted accordingly, this release being given to exonerate said Smith, his heirs and assigns of and from all obligations arising from or growing out of the said agreement, in said lease contained. In witness whereof," etc. Thereafter, in 1876, the plaintiff erected on the demised premises a four story brick dwelling-house, of the description mentioned in the lease, and in April, 1884, appointed an

arbitrator under the provisions of the lease and notified the defendant thereof, but the defendant declined to appoint an arbitrator or to renew the lease on the grounds, first, that the release of July 22, 1864, by its true construction abrogated and annulled the convenant for renewal, and also the alternative and dependent obligation to pay for any building erected on the premises, and second, that the plaintiff by under-letting the premises without the consent of the lessor, in violation of a covenant in the lease, had thereby incurred a forfeiture.

The learned trial judge construed the release as operating merely to release the plaintiff from the obligation to build within six years from the date of the lease, and as extending the time so as to give to the plaintiff the entire remainder of the term of twenty-three years within which to perform the covenant, but held that it did not otherwise discharge or affect the covenant and that the plaintiff remained bound to build at some time within the term. The language of the release does not, we think, justify this interpretation. The operative words of the instrument are in the most general and comprehensive language. The plaintiff is released "from the said covenant and agreement to build in the said lease contained." It declares that "the lease in all its parts shall hereafter be acted upon by the respective parties the same as if the covenant had not been inserted therein," and by the final clause it declares that the purpose of the release is " to exonerate the said Smith, his heirs and assigns from all obligation arising from, or growing out of the said agreement in said lease contained." The recital it is true refers to the time within which, by the lease, the building was to be erected, but only as a part of the covenant, the whole of which is embraced in the recital. We think the release wholly discharged the plaintiff from any obligation to build, and that thereafter the lease stood as though no covenant to build had been inserted. We concur in the proposition of the learned counsel for the defendant, that the main consideration for the conditional covenant of renewal by the lessee was the enhancement of the value of the demised premises by the erection of the building men-

tioned in the lease, and also in the proposition that if no
building was standing on the demised premises at the expira-
tion of the term, or if a building was standing thereon at that
time, but one not erected under the provisions of the lease,
that in either case the plaintiff would be remediless and that
the defendant would not be bound either to renew the lease
or to pay the value of the building.  The covenant to build,
contained in the lease at the time of its execution, imposed
upon the lessee the burden of making a valuable erection
upon the demised premises, for the expense of which he was
to be reimbursed at the end of the term, either by receiving
its value or by a renewal of the lease for a long term, during
which the rental value of the property above the ground rent
would, as he manifestly contemplated would be the case,
repay him for the expenditure.  On the other hand, if the
defendant elected to renew the lease at a small ground
rent, it would receive the premises at the end of the renewal
term, increased in value by the building erected by the
lessee, free from any obligation to pay its value.  We are of
opinion that if the effect of the release of July 22, 1864,
was not only to discharge the plaintiff from any obligation
to build, but also to deprive him of any right under the
lease to build during the term, the further result would follow
that the covenant on the part of the defendant to renew the
lease or to pay the value of the building, at the expiration of
the term, would also fall with the failure of the consideration
upon which it was based.  The erection of a building by the
plaintiff, not authorized by the lease, would be a mere volun-
tary act which would furnish no consideration for and give
no right to a renewal.  The obligation to build was discharged
by the release; but the right to build during the term was,
we think, preserved, and the plaintiff having built became
entitled to the exercise by the defendant of the option pro-
vided by the lease.  Striking out of the lease the covenant of
the lessee to build, there remains the agreement that if the
lessee shall build and the building shall be standing on the
demised premises at the end of the term, the defendant

would either pay the appraised value or renew the lease.
This construction gives full effect to the release, and is the
practical construction put upon it by the parties. The plaint-
iff erected a building in 1876, and the defendant in 1884,
before any question had arisen, applied to the plaintiff to
be informed whether he intended to renew the lease. It
is familiar law that if one person agrees to do a particular
thing, provided another shall do a certain other thing, per-
formance by the latter supplies the lack of a previous promise
to do the thing and entitles him to enforce the agreement of
which his act was the consideration. (*Beckwith* v. *Brackett*,
97 N. Y. 52.) We are of opinion, therefore, that in the
absence of any other defense the plaintiff is entitled to the
exercise of the option reserved to the defendant.

The lease contained a covenant by the lessee, his executors,
administrators, or assigns, that he or any of them " shall not,
or will not at any time or times hereafter, during the term
hereby granted, lease, let or demise all or any part of the said
premises, nor assign, transfer or make over the same or the
present lease, or any of the renewals of his or their term, to
any person or persons whomsoever without the consent of the
parties of the first part, their successors or assigns, in writing
under their seal, for that purpose first had and obtained." It
was shown on the trial that the house erected by the plaintiff
was an apartment-house and that the plaintiff occupied one
range of rooms and let the other apartments to tenants by the
month, by verbal lease, the rent being exacted each month in
advance. It further appeared that the house had been occu-
pied in this manner from the time it was built in 1876, and
that in November of each year down to and including Novem-
ber, 1884, the plaintiff paid to the defendant the rent due
under the lease, which was at all times received without objec-
tion, and the evidence justifies the conclusion that it was
received by the defendant with full knowledge of the character
of the house, and that it was occupied as an apartment-house.
Subsequent to the commencement of this action rent fell due,
which was not received, and it is claimed by the defendant

that it is entitled to insist that the lease was forfeited by the under-letting of apartments in the house after November 1, 1884, and that the receipt of rent up to that time did not operate to waive a subsequent breach of the condition. Forfeitures are not favored and *Dumpor's Case* (2 Coke, 119) is a notable instance of the strong leaning of courts against enforcing them. Following the principle of that case it was held in *Brummell* v. *Macpherson* (14 Ves. 173), that a condition against assignment in a lease was determined forever by the consent of the lessor to an assignment; although " to one particular person subject to the covenants in the original lease." The defendants on the 14th of December, 1863, consented in writing that Kiernan, the original lessee, might assign the lease to the plaintiff upon the condition that the assignee should perform the covenants in the lease.

But passing the question of the effect of this consent upon the rights of the parties, we are of opinion that the conduct of the defendant in receiving for a series of years without objection, the rent due on the lease, with knowledge of the actual situation, should, if necessary, be construed as a license to use and occupy the building as an apartment house, and not as a mere waiver from time to time of a particular antecedent breach of the covenant. The construction of the house indicated that it was designed for permanent use as an apartment house. It is consistent with the circumstances and with fair dealing to construe the acts and silence of the defendant as an assent that the somewhat peculiar interest created by the letting of the apartments from time to time for brief periods, was not an under-letting or parting with any interest in the demised premises, within the meaning of the covenant. The interest of an occupier of an apartment is peculiar. He has simply the right to occupy designated rooms during the time specified, but a destruction of the building ends the right (*Kerr* v. *Merchant's Ex. Bank*, 3 Edw. Ch. 315; *Graves* v. *Berdan*, 29 Barb. 100), and thereafter he would retain no interest in the lot. Letting rooms to lodgers is held not to be a breach of a covenant against under-letting. (*Doe* v.

*Laming*, 4 Camp. 73; see also *Wilson* v. *Martin*, 1 Denio, 602; *White* v. *Maynard*, 111 Mass. 250.) The plaintiff at all times occupied a part of the premises, and the defendant had the protection which his personal oversight would afford. It would be inequitable to permit the defendant to insist upon a forfeiture, when by its conduct it had sanctioned the construction which the plaintiff had placed upon the covenant.

The final question relates to the right of the plaintiff to the relief given by the judgment which in substance authorizes the defendant to appoint an appraiser within a specified time, to act in conjunction with the appraiser appointed by the plaintiff in fixing the values specified in the lease, and in case the defendant neglects to make such appointment, the judgment provides that the appraiser named by the plaintiff may associate with himself another appraiser to fix the valuations, and that when the valuations are determined, the defendant is required either to pay the value of the building as ascertained, or execute a new lease in accordance with the provisions of the covenant of renewal in the orignal lease. It is insisted that the plaintiff cannot maintain an action for specific performance until he has procured the valuation to be made in the manner pointed out by the lease. This objection is, in substance, that the action is premature. But the objection was not taken on the trial, and it seems that the action was brought on the invitation of the counsel for defendant " to facilitate the settlement of the points of difference " between the parties. It is further insisted that a court of equity will not entertain a bill for the specific performance of an agreement for arbitration. The judgment does not compel the defendant to appoint an arbitrator. It permits the defendant to name an appraiser, and if it fails to do so, provides for an appointment in behalf of the plaintiff in the manner provided in the lease. The appraisers when appointed will be the appraisers selected by the parties in precise accordance with their agreement. It is further insisted that the defendant having refused to renew the lease, the only remedy of the plaintiff is an action to recover the value of the building.

The contract binds the defendant either to pay such value, or execute a new lease. It is bound to perform its contract. by availing itself of one or the other of these alternatives. It. cannot refuse to give a new lease and turn the plaintiff out of possession, leaving him for his remedy to an action at law on the covenant.

We think this was not a case for a statutory allowance under section 3252 of the Code. (See *Gray* v. *Robjohn*, 1 Bosw. 618.)·

The judgment should be modified in this respect, and also by incorporating therein the provision for the appointment of an umpire in the contingency mentioned in the lease, and as. so modified, it should be affirmed with costs.

All concur.

Ordered accordingly.