## INJUNCTION AGAINST FORFEITURE OF LEASE FOR UNDER-LETTING.

Circuit Court of Cuyahoga County.

WILLIAM BECKENBACH v. HENRY HARLOW, GUARDIAN, ET AL.

Decided, November 17, 1909.

*Landlord and Tenant—Covenant Against Under-letting—Covenant Waived for a Time by Lessors—Then Insisted Upon—Injunction Against Forfeiture of the Lease.*

Injunction will lie to restrain the lessors of premises from declaring the forfeiture of a lease containing a covenant against under-letting, where past violations of this covenant had been made with the knowledge of the lessors and without objection from them; but such an injunction will not operate to prevent lessors from insisting upon an observance of the covenant against under-letting in the future, after notice of their intention to thereafter stand on the covenant.

*Frank Butler* and *J. J. Hogan,* for plaintiff.
*Berkeley Pearce,* contra.

TAGGART, J. (sitting in place of Winch, J.) ; HENRY, J., and MARVIN, J., concur.

The plaintiff, as tenant of the premises described in the petition, seeks an injunction restraining the defendant from ouster proceedings and declaring a forfeiture of the leasehold. The pleadings and testimony disclose that he has been in the occupation of the premises about ten years; has expended about $12,000

in improvements thereon; that unless this relief is granted he will be subjected to suits in forcible entry and detention, be dispossessed of the property and suffer great loss and damage, and that he will be without any adequate remedy at law.

The defendant in his answer admits many of the averments of the petition, and avers the facts to be that the plaintiff has sublet a suite of rooms to a tenant, and has received rent therefor. The defendant further admits that neither Abbie J. Harlow nor Sarah J. Harlow nor the defendant as guardian, have ever actually made any objection to the plaintiff sub-letting any portion of said premises until February, 1909; that on or about said date, defendant notified plaintiff that he was violating the covenants of his lease and elected to forfeit said lease for said under-letting, and refused to receive any further rents from plaintiff, and intends to and will insist on such forfeiture, and will adopt and pursue any legal measures to obtain possession of said premises, unless restrained by the courts.

It appears from the evidence that Abbie J. Harlow was the owner of these premises from the year 1899 to the year 1902; that she then conveyed the same to Sarah Harlow, who thereafter, until the year 1906, managed and looked after the premises in controversy; that in the year 1906 a guardian was appointed for Sarah Harlow, so that for seven of the ten years during which the plaintiff has been in the occupation of these premises the owners of the property have had every means of ascertaining how the premises were used and occupied. There is no evidence that any means were employed by the plaintiff to prevent them from knowing fully and completely everything concerning said property. On the contrary, everything that was done was open, visible and capable of ascertainment, and without any complaint or protest on the part of either of these owners, but all of the time by their apparent acquiscence, and acceptance of the rent from the occupying tenant.

This situation continued until February, 1909, when the guardian of Sarah saw fit to elect to forfeit this lease and dispossess the plaintiff, or threaten to dispossess him.

The principal ground of complaint is that one or more of the suites of rooms over the livery barn are or were rented to persons

other than the employes of the plaintiff, without the consent in writing of the lessors, and that in consequence he, as such guardian, so elected to forfeit said lease and determined to secure the possession of the premises.

In the case of *Union Cent. Life Ins. Co.* v. *Pottker,* 33 Ohio St., 459, the court stated the rule in respect to forfeitures, as follows:

"Forfeitures are odious, and there must be no cast of management or trickery to entrap a party into a forfeiture."

It would seem from this entire testimony that the conduct of Abbie J. Harlow and Sarah J. Harlow fairly led the plaintiff into the belief that this covenant in respect to under-letting would not be insisted upon, and that in consequence he continued to sub-let these suites of rooms, and also the portion of the premises that had been sub-let for a feed business without protest or objection, and the first protest came in February, 1909, in the shape of a declaration of forfeiture and a notice to vacate the premises.

We are of opinion that to permit the defendant to now prosecute a suit either in forcible detention or a suit in equity to declare a forfeiture would be a gross injustice, savoring of a fraud on the rights of the plaintiff

"Where the enforcement of the forfeiture would operate as a fraud, courts of equity have granted relief though the forfeiture was incurred for other reasons than the non-payment of rent. Thus relief has been granted where the lessee's breach was caused by conduct of the lessor which naturally induced him to believe that a performance of the conditions of the covenants would not be exacted." 18 Am. & Eng. Enc. Law (2 Ed.), 391.

We think the language of Andrews, J., in speaking for the court of appeals in the case of *Smith* v. *Church,* 107 N. Y., 610, and particularly on page 618, is peculiarly fitted to this case:

"The lease contained a covenant by the lessee, his executors, administrators, or assigns, that he or any of them 'shall not, or will not at any time or times hereafter, during the term hereby granted, lease, let or demise all or any part of the said premises, nor assign, transfer or make over the same or the present lease, or any of the renewals of his or their firm, to any person or persons whomsoever without the consent of the parties of the first part,

their successors or assigns, in writing under.their seal, for that purpose first had and obtained.' It was shown on the trial that the house erected by the plaintiff was an apartment house and that the plaintiff occupied one range of rooms and let the other apartments to tenants by the month, by verbal lease, the rent being exacted each month in advance. It further appeared that the house had been occupied in this manner from the time it was built in 1876, and that in November of each year down to and including November, 1884, the plaintiff paid to the defendant the rent due under the lease, which was at all times received without objection, and the evidence justifies the conclusion that it was received by the defendant with full knowledge of the character of the house, and that it was occupied as an apartment house. Subsequent to the commencement of the action rent fell due, which was not received, and it is claimed by the defendant that it is entitled to insist that the lease was forfeited by the underletting of apartments in the house after November 1, 1884, and that the receipt of rent up to that time did not operate to .waive a subsequent breach of the condition. Forfeitures are not favored, and *Dumpor's Case* (2 Coke's [Littleton], 119) is a notable instance of the strong leaning of courts against enforcing them. Following the principle of that case it was held in *Brummell* v. *Macpherson* (14 Ves. [Jr.], 173), that a condition against assignment in a lease was determined forever by the consent of the lessor to an assignment, although 'to one particular person subject to the covenants in the original lease.' The defendants on the fourteenth of December, 1863, consented in writing that Kiernan, the original lessee, might assign the lease to the plaintiff upon the conditions that the assignee should perform the covenants in the lease.

"But passing the question of the effect of this consent upon the rights of the parties, we are of opinion that the conduct of the defendant in receiving for a series of years, without objection, the rent due on the lease, with knowledge of the actual situation, should, if necessary, be construed as a license to use and occupy the building as an apartment house, and not as a mere waiver from time to time of a particular antecedent breach of the covenant. The construction of the house indicated that it was designed for permanent use as an apartment house. It is consistent with the circumstances and with fair dealing to construe the acts and silence of the defendant as an assent that the somewhat peculiar interest created by the letting of the apartments from time to time for brief periods, was not an underletting or parting with any interest in the demised premises, within the meaning of the covenant.''

We are of opinion that the plaintiff is entitled to an injunction restraining the defendant from declaring a forfeiture for the past violations of the covenants of this lease and from beginning any forcible entry and detention suits, or any suits to declare a forfeiture of said lease for said past violations, or for permitting his employes to occupy said suites of rooms when such occupancy is a part of the compensation or wage of said employes, or permitting plaintiff to continue to lease said part of said premises for a feed business as now and heretofore conducted, but this injunction is not to operate or prevent the defendant from declaring a forfeiture or seeking to secure the occupation of said premises for any violations of said lease subsequent to December 1, 1909.