(8 Misc. Rep. 61.)

MAYOR, ETC., OF CITY OF NEW YORK v. NEW YORK REFRIGERATING CONST. CO. et al. (two cases).

(Supreme Court, Special Term, New York County. April, 1894.)

1. MUNICIPAL CORPORATIONS — CANCELING FRANCHISE — EXISTING RIGHTS.
    Where the grant of a franchise by a city reserves to a municipal board power to notify the grantee, on its failure to comply with the provisions of the franchise, to discontinue its operation and business thereunder, such board has no power to annul the franchise, so as to destroy rights and liabilities accruing prior thereto.

2. SAME—GRANT OF FRANCHISE.
    One who obtains a franchise from the city, which necessitates the laying of the pipes in the street, takes the same subject to delay or refusal on the part of the common council, in which is vested control of the streets, to grant a permit to lay such pipes.

3. GUARANTY—LIABILITY OF GUARANTOR.
    The liability of a guarantor of rent, having become fixed for rent in arrear, can be discharged only by payment, release, or other satisfaction.

4. CONTRACTS—CONSTRUCTION BY PARTIES—EFFECT.
    A construction of a contract by the parties thereto is of great weight in determining its meaning.

Two actions by the mayor, aldermen, and commonalty of the city of New York against the New York Refrigerating Construction Company and others to recover money alleged to be due under contract. Judgment for plaintiffs.

William H. Clark (David J. Dean and Terence Farley, of counsel), for plaintiffs.
Burton N. Harrison, for defendants.

LAWRENCE, J. These actions are brought to recover certain sums which are alleged to have become due from the defendant the New York Refrigerating Construction Company to the plaintiffs, pursuant to the provisions of an agreement entered into between said corporation and the plaintiffs on the 15th of May, 1890. The other defendants are the sureties who joined with the New York Refrigerating Construction Company in the execution of a bond to the plaintiffs, the condition of which was that if the said, the above-bounden, the New York Refrigerating Construction Company, shall well and truly, and in a good, sufficient, and workmanlike manner, perform the said contract, and each and every provision therein contained on its part to be done and performed, and shall maintain the said apparatus in accordance with the terms and provisions in said contract stipulated, and shall in each and every respect comply with the conditions therein contained, then this obligation to be

void; otherwise, to remain in full force and virtue.   It is claimed on the part of the plaintiffs in the first action that an installment became due from the New York Refrigerating Construction Company to the plaintiffs on the 1st of February, 1891, amounting to $1,375, and that a further installment of said amount became due on the 1st of May, 1891.   The second action is brought to recover two further installments alleged to have become due to the plaintiffs, in accordance with the terms of the agreement aforesaid, on the 1st day of August and 1st day of November, 1891, each installment being for the sum of $1,375.   The defendants, by their original answer, after denying that the sums aforesaid became due under the terms of the agreement aforesaid, and after alleging a willingness and tender to perform on the part of the defendants, averred that any nonfulfillment of the terms of the agreement was caused by the failure and neglect of the plaintiffs to perform their part of the obligations in the premises, and they averred that they had never received any receipts whatever from the standholders in the market, and that the plaintiffs have never become entitled to any percentage on the gross receipts; and, by a supplemental answer, the defendants allege that subsequent to the commencement of the action, and on or about the 13th of March, 1893, the plaintiffs canceled and annulled the said agreement of May 15, 1890, of which cancellation and annulment notice in writing, dated April 3, 1893, was served on the defendants, and it is averred that by reason thereof the defendants were released and discharged from every obligation or liability upon the bond in the complaint mentioned; and they further aver that the defendants have accepted and acquiesced in such cancellation and annulment.   By the agreement of the 15th of May, 1890, the plaintiffs granted to the defendant corporation permission to introduce into the market known as the "New West Washington Market" its refrigerating apparatus, for the purpose of supplying to the standholders in said market, at certain specified rates per cubic foot, cold air for preserving, etc., and to maintain the said apparatus in said market for said purpose for the period of 10 years from the date of said agreement.   It was further provided in said agreement as follows:

"7. The said party of the second part further agrees that it will pay into the city treasury quarterly, for the privileges herein set forth, on the first day of August, November, February, and May, in each and every year, five per cent. of the gross receipts for the quarter then last past, from the standholders in said market, and the additional sum of $5,500 per annum, such additional sum to be paid in equal quarterly installments on the above days in each and every year."

Paragraph 10 provides—

"That the said party of the first part hereby grants permission to the said party of the second part to introduce said apparatus for said refrigerating purposes, in said New West Washington market, and to maintain the same therein for the period of ten years from the date of this contract."

On the 30th of March, 1893, the following preamble and resolutions were adopted at the meeting of the commissioners of the sinking fund:

"Whereas, the comptroller certified in writing to the commissioners of the sinking fund on February 23d, 1893, that in his opinion the New York Re-

frigerating Construction Company is not performing each and every provision of the agreement made by it with the city, dated May 15th, 1890, to furnish cold air for refrigerating purposes in West Washington Market; and whereas, a copy of such certificate has been furnished by the comptroller to the said company; and whereas, the company has failed to appear this day in response to due notice in reply to the charges and in its own defense: Therefore, resolved, that the commissioners of the sinking fund hereby find and declare that the charges have been sustained, and the comptroller is authorized and directed to notify the New York Refrigerating Construction Company to discontinue its system, and to remove all pipes, fixtures, and connections, and to restore the New West Washington Market building or buildings to their original condition, as provided for in said agreement. Resolved, that the agreement with the New York Refrigerating Construction Company of May 15th, 1890, for supplying refrigeration in the New West Washington Market, be and hereby is canceled and annulled. Richard A. Storrs, Secretary."

The condition of the bond has already been stated, and also the defenses interposed by the defendants. It is contended on the part of the defendants, in the first place, that it was the intention of the parties, that whatever the plaintiffs were to receive from the defendant company was to come out of the receipts of the business done in furnishing refrigeration to the standholders in the market, and that, as it is admitted that there have been no such receipts, the plaintiffs should not be allowed to recover anything. I do not think that the position is tenable. The obligation under the seventh clause of the agreement is to pay, in addition to the gross receipts, the sum of $5,500 per annum, such additional sum to be paid in equal quarterly installments, etc. This provision is independent of the gross receipts, and, as the agreement states, additional thereto. The plaintiffs did not guaranty that there should be any receipts from the standholders by the defendant corporation. If there were such receipts, the plaintiffs were to be entitled to 5 per cent. upon the gross amount received, but the sum of $5,500 per annum was, as I read the contract, to be paid in any event in quarterly installments, without regard to the success or failure of the enterprise. Furthermore, it is well to bear in mind that the company, there having been no receipts, recognized its obligation to pay, and did pay from the time of the making of the agreement until the 1st of February, 1891, which was an admission on the part of the defendant corporation of its liability, and a practical construction by the parties of the contract; and such a construction, although it has not the force of a judicial decision, is of great weight, and should not be lightly disregarded. Powers v. Village of Athens, 26 Hun, 282–287; Easton v. Pickersgill, 55 N. Y. 310–315.

It is also contended that there is a complete defense for the three individual defendants, as sureties in the bond sued on, for the reason that the complaint does not charge any default of the company as to any matter for which the sureties in the bond became thereby bound; and it is claimed that the recital in the bond should control the condition therein contained, and that, if there is any conflict between the two, the latter should give way to the former. This cannot, I think, be maintained. There is no conflict between the recital in the bond and the condition thereof. The recital refers to the agreement as being annexed to the bond, and the condition of the bond is that the contracting parties shall, in each and every re-

spect, comply with the conditions in the contract contained.   There is no pretense that there was any fraud practiced upon the sureties, or any concealment as to the obligation which they were to assume. It must be presumed that they read the instrument which, it is recited in the bond, was prefixed thereto, and that they knew each and every condition therein contained, and they bound themselves that the contract should be in every respect performed and fulfilled. The cases cited by the learned counsel for the defendants do not, in my opinion, have any application to this case, because there is no conflict between the recital and the condition, and there is nothing, therefore, left for construction; and, also, because the agreement between the corporation and the plaintiffs is annexed to the bond and forms a part thereof.   It is also claimed by the defendants' counsel that each of the defendants has a perfect defense to the plaintiffs' claim, because the agreement of May 15, 1890, was canceled and annulled by the resolutions passed by the commissioners of the sinking fund on the 30th of March, 1893, followed as it was by the notice contained in the comptroller's letter of April 3, 1893.   Such I do not think can fairly be said to be the effect of the resolutions of the commissioners of the sinking fund.   The resolutions were passed pursuant to the provision of the agreement which declares that:

"If at any time the said comptroller shall be of the opinion, and shall so certify to the commissioners of the sinking fund in writing, that the party of the second part is not performing each and every provision of this agreement, * * * and a copy of such certificate shall be furnished by the comptroller to the party of the second part, and that, after a reasonable opportunity shall have been afforded to the said party of the second part to be heard in reply to the charges, and in its own defense, before the board of sinking fund commissioners, then and in such case the comptroller, upon the direction of the commissioners of the sinking fund, given after such hearing had, shall have the power to notify the said party of the second part to discontinue the said system," etc.

I am of the opinion that discontinuing the system does not mean the cancellation of any claim which may have accrued to the plaintiffs by reason of the failure of the defendant corporation to perform its obligations under the contract.   Discontinuance of the system looks to the future, and not to the past, and, when the discontinuance takes place the rights and liabilities of the parties up to the time of discontinuance are preserved.   This, I think, is the clear construction of the terms of the agreement.   It is, however, contended by the defendants that, as the commissioners of the sinking fund resolved that the agreement "is canceled and annulled," the court cannot look at the surrounding circumstances, but must be governed by what is claimed to be the effect of the strict letter of the resolutions.   It will be observed by examining the fifth paragraph of the agreement of May 15, 1890, that the only power reserved to the commissioners of the sinking fund is to notify the party of the second part to discontinue the system, and no power is confided to the commissioners to destroy the rights and obligations which, up to that time, have accrued; and, if the legitimate construction of the language employed in the resolution of the commissioners is such as the defendants contend for, the resolution is not binding upon the plaintiff.   Furthermore, no power is reserved in the agree-

ment in question to the commissioners of the sinking fund to waive any indebtedness which may have been incurred by the defendant corporation or by the sureties, either in the contract or by law.

Under the consolidation act (section 123), the comptroller is the proper officer to settle and adjust claims in favor of or against the corporation. The duties of the sinking fund commissioners are prescribed by section 170 of that act, and among them we do not find an authority to compromise claims alleged to exist in favor of the city against its debtors. Again, it has been held that, after the liability of the guarantor of rent has become fixed for rent in arrear, such liability can only be discharged by payment, release, or other satisfaction; that it will not be discharged by the surrender by the lessees of the unexpired term in possession of the demised premises, without the knowledge or consent of the guarantor, upon an agreement that the lessor will release his claim for rent yet to accrue, but that such surrender shall not affect his claim for rent already due. Kingsbury v. Williams, 53 Barb. 142; Kingsbury v. Westfall, 61 N. Y. 356. In that case Gray, C., after stating that the guarantor, like a surety, is bound only by "the strict letter or precise terms" of the contract of his principal, whose performance of it he has guarantied, that he is in this respect "a favorite of the law," and that a claim against him is strictissimi juris, goes on to say:

"This just principle is now invoked by the defendant, and sought to be interposed by him as a shield against the plaintiff's right to recover, not upon any portion of the contract upon which a liability was to accrue when the change was made, or upon any portion of it changed by the new arrangement, but because, as he says, the parties, the one by releasing to the lessor the residue of the term in the demised premises, and the other releasing to the lessee the rent to accrue therefor for the same unexpired term, have, without his consent, changed the contract, the performance of which on the part of the lessee he had guarantied. It is true the contract was changed, but the obligation which the lessee undertook to perform, so far as it relates to the payment of the rent which had then accrued, was not changed. It remains in the precise terms it was before; it was, as to the then future, the executory portion of it that was abrogated."

This case seems to me to be in point in the case at bar. By the resolution of March 30, 1893, rights which had accrued were not changed, canceled, or annulled. The cancellation or annulment was, I think, under the circumstances, prospective, and related to the discontinuance of the system introduced by the defendant corporation in the future, without impairing rights and liabilities which may have accrued in the past.

In the view which I have taken of this case, it seems unnecessary to discuss whether the delay of the common council to act upon the application of the defendant corporation for a permit affords any answer to the claim of the plaintiffs. The delay complained of occurred between the 12th of May and the 2d of July, 1890, and the corporation has paid the installments which became due for that period of time, apparently voluntarily, and without any protest or claim that they had been injured by such delay. It may, however, be said in this connection, that as by the provisions of the consolidation act the granting of permits for laying pipes in the public highway is vested in the common council, and as the granting of such permits involves discretion and judgment, the defendants must

be held to have taken their contract subject to such delay, or even to an absolute refusal on the part of the common council to grant any permit. It would have been their right, if such permit was absolutely refused, or if the delay was of such a serious character as to imperil the successful operation of the refrigerating system which they proposed to introduce, to rescind the contract or to claim damages therefor; but as the corporation paid the installments which became due during that period, and prosecuted the work of introducing their system into the market, it cannot now claim that it is not liable to pay such installments as have subsequently become due. If the granting of the permit by the common council was a condition precedent to the right to maintain an action for the rental installments, it could be, like any other condition, waived, and that such waiver was made, the proof shows. Wiley v. Inhabitants, 150 Mass. 435, 436, 23 N. E. 311, and cases cited. For these reasons I am of the opinion that the plaintiffs are entitled to recover in each of these actions the amount demanded by them in their complaint. Findings may be settled on two days' notice.