SIMON v. SCHMITT et al.

(Municipal Court of City of New York, Borough of Manhattan, Sixth District. July 29, 1909.)

1. LANDLORD AND TENANT (§ 300*)—SUMMARY PROCEEDINGS—PERSONS ENTITLED TO MAINTAIN.

A sole heir who has succeeded to all the right, title, and interest which lessor had is the owner and landlord entitled to maintain summary proceedings under Code Civ. Proc. § 2235, providing that the application may be made by the landlord or the person lawfully entitled to the possession of the property.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1292, 1293; Dec. Dig. § 300.*]

2. COURTS (§ 189*)—MUNICIPAL COURTS—EQUITY JURISDICTION.

Code Civ. Proc. § 2244, providing that a tenant to whom a precept is issued may set forth any new matter constituting an equitable defense or counterclaim, applies to the Municipal Court.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 189.*]

3. COURTS (§ 188*)—MUNICIPAL COURTS—EQUITY JURISDICTION.

Under Municipal Court Act (Laws 1902, p. 1490, c. 580) § 2, subd. 2, providing that the Municipal Court shall not have any equity jurisdiction except that a person to whom a precept is issued may set up an equitable defense in summary proceedings, the Municipal Court has jurisdiction to entertain the equitable defense to a summary proceeding against a tenant that it was agreed in the lease that, if on a stipulated date preceding the expiration of the term there should be a house or houses on the premises, the value of the premises should be ascertained by appraisement, and lessee have the right to renew for another term.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 188.*]

4. LANDLORD AND TENANT (§ 83*)—RIGHT TO RENEW LEASE.

Where the original term of a lease has terminated by expiration, and not by the election of the landlord for failure by the tenant during its term to pay the taxes, or by reason of an assignment of the lease by the tenant, the landlord cannot claim, in a proceeding to dispossess for alleged holding over after the term, as against the tenant's equitable defense of a right of renewal under the lease, that because taxes were due and unpaid at the time the proceeding was commenced, or that the tenant had assigned, he had forfeited his right to a renewal.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 266–267; Dec. Dig. § 83.*]

5. LANDLORD AND TENANT (§ 76*)—COVENANT AGAINST ASSIGNMENT—WAIVER.

The forfeiture of a lease for breach by lessee of the covenant not to assign was waived where lessor knew of the assignment and personally directed it, and thereafter accepted rent from the assignee.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 230; Dec. Dig. § 76.*]

6. LANDLORD AND TENANT (§ 83*)—RIGHT TO RENEWAL OF LEASE.

The provision of a lease that if during the term the taxes are not paid, or the tenant defaults in any of the covenants, the landlord may re-enter, does not affect the right to a renewal where not conditioned on the compliance by the tenant with all the covenants of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 266–267; Dec. Dig. § 83.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. LANDLORD AND TENANT (§ 83*)—RIGHT TO RENEWAL OF LEASE—DEATH OF LESSOR.

The death of the lessor does not render a covenant to renew inoperative, and his heir can be compelled to specifically perform.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 278; Dec. Dig. § 83.*]

8. LANDLORD AND TENANT (§ 83*)—COVENANT TO RENEW—UNILATERAL.

A covenant to renew a lease at an appraised value, though unilateral in the tenant makes no express agreement to accept a new lease, can be enforced to the extent of compelling an appraisal as the lease provides.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 263–264; Dec. Dig. § 83.*]

9. LANDLORD AND TENANT (§ 86*)—COVENANT TO RENEW LEASE—UNILATERAL CONTRACT.

Though a covenant to renew a lease is unilateral in that the tenant does not agree to accept a new lease, yet, where the tenant exercises his privilege, it then becomes a mutual obligation, binding on the landlord.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 270; Dec. Dig. § 86.*]

10. LANDLORD AND TENANT (§ 83*)—COVENANT TO RENEW—TIME ESSENCE OF COVENANT.

Time was not of the essence of a covenant to renew a lease providing that, if on a certain date before expiration of the term there should be erected on the premises a house or houses, the parties within 10 days thereafter would respectively appoint disinterested persons, and that the two so appointed should within 10 days thereafter select a third, and that the three so appointed, or any two of them, should before a certain day appraise the value of the premises, which appraisal should be the basis of the new lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 83.*]

11. LANDLORD AND TENANT (§ 86*) — COVENANT TO RENEW — APPOINTMENT OF APPRAISERS—EXTENSION OF TIME.

Where statements of the landlord may fairly be construed as implying and causing the tenant to believe that the landlord did not consider the time stipulated by the lease for the appointment of appraisers to fix the value of the premises as a basis for a renewal, as essential, that the landlord did not wish to appoint an appraiser because she was not ready and would join in the appointment later, or when the weather became warmer, there was a waiver on her part of the time provided for the appointment of appraisers.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 86.*]

12. SPECIFIC PERFORMANCE (§ 99*)—DELAY.

Where a failure by the tenant to appoint an appraiser within the time stipulated to fix the value of the premises as the basis for a renewal was not willful, and it does not appear that any new rights intervened, or that the position of the parties has been changed by the delay in appointing appraisers, or that any damage will result, while, if relief is refused, the tenant will lose a valuable building, and time was not made of the essence of the contract, equity will excuse the delay, and not withhold specific performance of the covenant to renew.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 299–304; Dec. Dig. § 99.*]

13. COURTS (§ 189*)—SUMMARY PROCEEDINGS—JUDGMENT.

Municipal Court Act (Laws 1902, p. 1561, c. 580) § 249, providing for a judgment dismissing an action on the merits where the court is of the opinion that plaintiff is not entitled to recover as a matter of law, does not apply to a summary proceeding.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 189.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

14. LANDLORD AND TENANT (§ 310*)—SUMMARY PROCEEDINGS—RELIEF AWARDED.
    The only provision for a determination of a summary proceeding for
land is that there must be a final order (Code Civ. Proc. § 2249), and the
final disposition of such a proceeding, whether tried by the court with or
without a jury, is limited to a final order awarding possession to the
petitioner, or to the answering person, as the case may be.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §
1319; Dec. Dig. § 310.*]

Summary proceedings by Kathinka M. Simon, landlord, against
Ignatz Schmitt, tenant, and another. Judgment for the tenant.

Theall & Beam (Alexander Thain, of counsel), for petitioner.
Uriah W. Tompkins, for respondent.

MARKS, J. On April 28, 1888, John Simon, the father of the pe-
titioner, leased to the respondent the premises No. 2007 First avenue
for the term of 21 years ending May 1, 1909. In addition to the rent,
the tenant agreed that he would pay all taxes and other charges which
might be imposed or become a charge upon the premises, and, if he
failed to pay them, the landlord might pay them and charge the same
to the next quarter's rent when the same should be payable by the
tenant in the same manner and time as the rent reserved in the lease.
    The lease contains the following clause:

"And it is further mutually covenanted and agreed by and between the par-
ties to these presents for themselves and their respective representatives,
that in case there shall on the first day of January next preceding the ex-
piration of the term hereinabove granted be standing on the front or rear of
the lot hereby demised one or more well finished brick houses of not less than
two stories in height, and covering the whole front of said lot on First (1st)
avenue, then and in such case the said party of the first part or his represen-
tatives, and the said party of the second part or his representatives, shall and
will within ten days after the first day of January, respectively appoint one
disinterested person and the two so appointed shall within ten days after
their appointment select a third like disinterested person and the three so se-
lected and appointed, or any two of them, shall before the first day of Feb-
ruary next preceding the determination of the term hereinabove granted,
appraise under oath the value of the said lot at its cash value and return the
said appraisement to the said party of the first part or his representatives,
and the said party of the first part or his representatives shall within ten
days after the said appraisal shall be received, grant to the said party of the
second part or his representatives, a lease of the said lot for the further
term of twenty-one years next ensuing after the determination of the term
hereinabove granted, reserving an annual rent payable quarter yearly of five
per centum per annum, upon the appraised value of the said lot and the said
annual rent, however. not to be less than the annual rent of present lease
hereinabove reserved, which renewed lease shall be in all respects similar to
the lease above contained, that is to say, as to the last eleven years of said
within lease."

On the 1st of January, 1909, there had been erected, and there is
on the lot in question, a building of the kind described in the lease,
which cost about $5,000. This proceeding is brought to remove the
tenant from the premises on the ground that he is holding over after
May 1, 1909, the expiration of the term provided for in the lease.

Among other defenses, and as an equitable defense to the petition,
the tenant alleges that he took possession of the premises under the

lease, erected the building described in the lease at an expense of about $5,000, which was standing on January 1st and still so stands; that he notified the owners, Mrs. Simon (who had a dower interest, and her daughter the heir at law of the lessor), that he was ready to appoint an appraiser as provided in the lease, and demanded that they appoint an appraiser for the purpose of renewing the lease, which demand was refused; and that the petitioner has declined to give a renewal, and that thereafter he commenced an action in the Supreme Court to compel specific performance of the covenant for a renewal, which action is pending. The tenant claims that these proceedings to recover possession of the premises cannot be maintained because the relation of landlord and tenant does not exist between the parties by agreement, but, at most, there is a tenancy created by mere operation of law, and that the landlord's remedy is by an action of ejectment to recover the property, and that this court has power to hear and determine the equitable defense if I decide the petitioner can maintain this proceeding. The petitioner, on the other hand, claims that the heir at law has power to maintain this proceeding, but that this court cannot consider the equitable defense; that the tenant cannot litigate in this court the question that he is entitled to a new lease, and his only remedy is to apply to a court of equity for relief, or commence an action at law to recover damages for the alleged breach of the covenant of renewal; and, further, that a court of equity would grant no relief as the tenant has forfeited his right to a renewal, for the reason that he assigned the lease without the consent in writing of the landlord, and did not pay the taxes (it being proven that such taxes were only paid after these proceedings were commenced), and that, as time was of the essence of the covenant for renewal, the tenant did not appoint his appraiser within 10 days after January 1, 1909. John Simon, the lessor, died on January 26, 1894, intestate, leaving him surviving his wife and the petitioner Kathinka M. Simon, his only heir at law. The widow died on March 23, 1909, so that the only person now having an interest in the premises as owner is the petitioner. She has succeeded to all the right, title, and interest which John Simon had in the premises, and in and to the lease in question, and is the owner and landlord. The conventional relation of landlord and tenant is established, entitling the petitioner to maintain summary proceedings. Code, § 2235; Dorschel v. Burkly, 18 Misc. Rep. 240, 41 N. Y. Supp. 389; Drake v. Cunningham, 127 App. Div. 79, 111 N. Y. Supp. 199. The petitioner would therefore be entitled to an order awarding her the possession of the property if no defense exists for holding over.

Whatever doubt there may have existed heretofore as to the power of this court to hear and determine equitable defenses of the nature involved in this case is in my opinion removed by section 2244 of the Code and section 2 of the Municipal Court act (Laws 1902, p. 1490, c. 580). Section 2244 (title 2, c. 17, Code) provides that a tenant to whom a precept is issued may file an answer denying generally or specifically any material allegation of the petition, or setting forth a statement of any new matter constituting a legal or equitable defense or counterclaim. This section has been held to be applicable to the Municipal Court. Shotland v. Mulligan, 60 Misc. Rep. 58, 111 N. Y.

Supp. 642; Pelgram v. Ehrenzweig, 58 Misc. Rep. 195–197, 109 N. Y. Supp. 55. Subdivision 2 of section 2 of the Municipal Court act provides that the Municipal Court "shall not have any equity jurisdiction, except, however, that this subdivision shall not be so construed as to prevent a person to or against whom a precept is issued as provided in title 2 of chapter 17 of the Code of Civil Procedure from setting up an equitable defense in summary proceedings."

In Pelgram v. Ehrenzweig, supra, 58 Misc. Rep. 197, 109 N. Y. Supp. 56, Mr. Justice Bischoff says:

"An equitable defense is presented by a state of facts which, if pleaded as a counterclaim for affirmative relief in a court of equity, or made the basis of an action for such relief in a court of competent jurisdiction, would entitle the pleader to a judgment or decree, the effect of which would be to destroy or defeat the claim at law. Dobson v. Pearce, 12 N. Y. 156, 62 Am. Dec. 152; Pom. Code Rem. Equitable Defenses, etc., § 4, subd. 87 et seq., and cases cited in text and notes. That the court has jurisdiction at law only does not necessarily render equitable defenses unavailable in actions at law if the court is otherwise authorized to entertain such. The determination that an equitable defense exists does not involve an attempt to resolve the court into one of equity, so long as the court does not essay to extend equitable relief."

In Rodgers v. Earle, 5 Misc. Rep. 164, 168, 24 N. Y. Supp. 913, 915, in discussing the power of the District Court under the amendment of 1893, permitting equitable defenses to be set up in those courts in summary proceedings, Mr. Justice McAdam said:

"The inferior court could not, under that amendment, decree or enforce specific performance against the landlord. The most it can do, would be to find for the defendant on equitable grounds, leaving either party to seek the necessary substantial relief in a court having equity jurisdiction."

In Hansauer v. Dahlman, 72 Hun, 607, 25 N. Y. Supp. 277, an action was brought to obtain specific performance of an alleged agreement of the defendant to extend a lease, and a preliminary injunction was granted restraining the defendants in the meantime from prosecuting summary proceedings begun by them in the Municipal Court of Buffalo to remove the plaintiffs from the premises. The Municipal Court of Buffalo has the same jurisdiction in these proceedings as the Municipal Courts of this city. Section 2234, Code. In the case last cited the tenants claimed that they had in due time given notice to the landlord that they did elect to renew the lease, as by its terms it was their privilege to do, for the further term of four years, and that one of the defendants agreed to such renewal. The learned judge at Special Term held that the equitable defense was one of which the plaintiffs could avail themselves in the Municipal Court, but he denied the motion to dissolve the injunction on the ground that:

"The plaintiffs should be given the opportunity to have their right to occupy the demised premises for four years determined in such manner as will bar further proceedings on the part of the defendants to disturb them in the occupation of said premises in the event that they are able to show that they are entitled to such extension."

The appellate court held that the equitable defense could be by answer in the summary proceedings, so stated as to constitute a complete defense to that proceeding, which may be litigated in any court in which the proceeding is taken.

In dissolving the injunction, Mr. Justice Dwight says, page 611 of 72 Hun, and page 279 of 25 N. Y. Supp.:

"It seems to us very clear that the allegations of the complaint in this action indicate a complete defense to the summary proceedings in question, of which, if pleaded there, the Municipal Court of Buffalo must take cognizance, and that equity will not interfere to supplant the jurisdiction of that court already acquired in the proceeding."

Natkins v. Wetterer, 76 App. Div. 93, 78 N. Y. Supp. 713, was an action in which the tenant claimed he had made certain payments for interest and taxes which he was entitled to deduct from the rent due under the lease. The landlord disputed the payments, and sought to dispossess the tenant in the Municipal Court. The tenant procured an injunction restraining the prosecution of the summary proceedings until an accounting action brought by him in the Supreme Court was determined. The injunction was dissolved on the ground that the Municipal Court in the summary proceedings had jurisdiction to take the account and determine all questions which the tenant sought to have determined in the Supreme Court action. In Reich v. Cochran, 151 N. Y. 122–127, 45 N. E. 367, 37 L. R. A. 805, 56 Am. St. Rep. 607, it was held that this court could in summary proceedings try the question whether a lease was intended as a mortgage, and, if so, whether it was based upon an usurious contract.

I conclude, therefore, that this court has complete jurisdiction to try all the questions presented by the equitable defense in this case, and that the determination of that defense comprehends and involves every question relating to the tenant's right to a renewal of the lease. The landlord does not see fit to permit the tenant to occupy the premises until the determination of the suit pending in the Supreme Court for specific performance, but having brought the tenant into the Municipal Court, and this court having the power to entertain the equitable defense, I am of the opinion that I must inquire into the whole subject, and that a court of equity and the parties would be bound by the decision (Reich v. Cochran, supra) if not reversed on appeal from the order entered thereon. This court is to determine whether this is a case in which a court of equity, if its jurisdiction was invoked, would grant equitable relief. If the same facts were presented to a court of equity in an action for specific performance, would that court excuse the delay in appointing appraisers and compel a renewal? The result must be that, if there is a trial on the merits in this court as there has been in this case, the determination of this court upon that question is necessarily res adjudicata, if in favor of the landlord, that she is entitled to possession, and that the tenant holds over without right after the expiration of his term, and thus finally determining the equitable defense against the tenant, leaving him no remedy in a court of equity for relief in an action for specific performance or otherwise, whereas, if this court determines that the tenant has established his equitable defense, it must be deemed res adjudicata upon the question as to his right to continue in possession and to the appointment of appraisers and to a renewal of the lease in the manner provided therein, leaving him then to a court of equity to compel specific performance upon such adjudication.

The lease provides that, if the tenant fails to pay the taxes, the landlord may pay them, and charge them to the next quarter's rent, as rent. It also provides that the lessee shall not assign the lease without written consent of the landlord, and, if he violates this or any other covenant contained in the lease, the landlord may re-enter and remove all persons from the premises, and "the same to have again, re-possess and enjoy, as in before their first and former estate." If default or violation of the covenant for payment of taxes, or assignment of the lease during its term, had been made conditions under which a renewal would not have been granted, then the lessee could not demand a renewal, but the lease does not provide that such violation or default will prevent a renewal. The original term of the lease has terminated by expiration, and not by the election and act of the landlord for failure on the part of the tenant during its term to pay the taxes, or by reason of the assignment by the tenant. Summary proceedings for forfeiture or for re-entry, if the landlord had elected to declare the lease forfeited for violation of the covenant against assignment or for nonpayment of taxes (not having exercised his option to pay the taxes and charge them to the next quarter's rent due), could not be maintained (Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425), and in a proceeding to dispossess for alleged holding over after the expiration of the term the landlord cannot claim as he does here, as an offset to the tenant's equitable defense, that because taxes were due and unpaid at the time these proceedings were commenced, or that at one time the tenant parted with the lease, the tenant has forfeited his right to a renewal.

It appears in this case, however, that John Simon, the lessor, had personal knowledge of the assignment and personally directed the same, and the rent required to be paid by the lease was paid to him up to the time of his death in January, 1894, a period of about five years after the assignment was made. This constitutes a waiver of the forfeiture of the lease for breach of the covenant on the part of the lessee not to assign, and the condition once dispensed with is dispensed with forever. Smith v. Rector, etc., 107 N. Y. 610, 619; 14 N. E. 825; Ireland v. Nichols, 46 N. Y. 413. It also appears, however, that prior to the commencement of these proceedings, and during the original term granted by the lease, it was reassigned to the lessee, Ignatz Schmitt. But, even if it was to be held that the lessor's consent to the assignment had not been established, and that it was made in violation of the terms of the lease, that would be no reason for withholding specific performance. The covenant for a renewal is a separate independent clause and covenant standing by itself, and is dependent upon no other condition than that mentioned in it, namely, that a building shall stand on the premises on January 1, 1909. That is the only condition precedent to the right to a renewal, and the lessee has shown that he has complied with that condition, and therefore the landlord must renew. Tracy v. Albany Exchange Co., 7 N. Y. 472–475, 57 Am. Dec. 538. The contract for a renewal is not made binding upon the compliance by the tenant with all the covenants of the lease. The provision for re-entry means that if at any time during the term the taxes have not been paid, or the tenant makes default in

any of the covenants contained in the lease, the lessor or his heirs or assigns may re-enter the premises, but this does not affect the right to a renewal. The death of the lessor did not render the covenant inoperative, and the petitioner can be compelled to specifically perform the contract to renew. Kolasky v. Michels, 120 N. Y. 635, 24 N. E. 278. The contract for a renewal obligated and bound the landlord to the tenant to renew, but left the tenant entirely free, upon the landlord exercising his option to either accept or reject. If after appraisal the tenant was not satisfied, he could not be compelled to execute a new lease. The privilege is absolutely for the benefit of the tenant, which he can waive. Bauman v. Binzen, 65 Hun, 39, 19 N. Y. Supp.. 627; Smith v. Rector, etc., St. Philips Church, 107 N. Y. 610, 14 N. E. 825; Bruce v. Fulton National Bank, 79 N. Y. 154, 35 Am. Rep. 505; Zorkowski v. Astor, 156 N. Y. 393, 50 N. E. 983.

The petitioner claims that the covenant of renewal is unilateral (and citing the cases of Wadick v. Mace, 191 N. Y. 1, 83 N. E. 571, and Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454); that, therefore, it cannot be enforced against the lessor. But those cases also show under what circumstances an unilateral contract may be enforced and may be cited in support of the claim of the tenant in this case. The contract in this case may be unilateral in the sense that the tenant makes no express agreement on his part to accept a new lease, while at the same time he alone has the right to enforce the agreement; but, when the tenant exercises his privilege, it then becomes a mutual obligation binding on the landlord to proceed as the lease provides to ascertain the rental, and, although the tenant could not after appraisal be compelled to accept the result of the appraisal and execute a new lease, still he is entitled to specific performance on the part of the landlord to act as the lease provides. The covenant can be enforced to the extent of compelling an appraisal as the lease provides (Smith v. Rector, etc., St. Philip's Church, supra), leaving the tenant free to decide whether he will accept it (Bruce v. Fulton National Bank; Zorkowski v. Astor, supra), and to the extent that this clause sought to be enforced gave an option which the tenant seeking to enforce had expressly accepted within the term of its life this constitutes a "binding agreement" or a "completed bargain" which can be enforced, although unilateral in form (Levin v. Dietz, supra, 194 N. Y. 379, 87 N. E. 455). When the lessee has availed himself of the privilege of appointing appraisers to determine the rent, he can compel the lessor to perform his contract, and the latter cannot refuse to proceed, and turn the lessee out of possession, leaving him for his remedy to an action at law on the covenant. Smith v. Rector, etc., St. Philip's Church, supra. So in Van Beuren v. Wotherspoon, 164 N. Y. 368, 379, 57 N. E. 633, 636, Judge Martin says:

"Where a lease for a term of years contains a covenant on the part of the lessor that at the expiration of the term the lessee shall be paid the appraised value of the building, or a new lease at an appraised rent shall be granted, the lessee at the expiration of the term is entitled to retain the possession until the covenant shall be performed by the lessor."

The petitioner also claims that the covenant for a renewal is an agreement to make a new lease in the future, and is not a defense to a

proceeding for holding over, and cites the case of Salomon v. Weisberg, 29 Misc. Rep. 650, 61 N. Y. Supp. 60, upon that proposition. In that case, however, it was only held that the mere allegation that on a certain day the landlord promised and agreed with the tenant, and the tenant promised and agreed with the landlord to hire the premises for another year, expressed simply a promise to let and hire in the future, and nothing further was pleaded from which the intent of the parties could be gathered, and there was nothing in the answer asserting a right to possession. In the case at bar, however, the entire agreement under which the tenant claims to be entitled to a renewal is pleaded as an equitable defense, and, if that defense is sustained, the tenant is entitled to possession. In my opinion time was not of the essence of the covenant for renewal. The petitioner could waive the provision as to the time when she would require the tenant to take the steps provided for in the lease to obtain an appraisal, and her acts and words should be according to the actual merits of the case held to be a waiver and an extension of that provision. Time is of the essence of the contract so far as the erection and maintenance of a building is concerned. The provision is that if on the 1st day of January, 1909, there shall be standing a building of the kind described, the lessor and the lessee will respectively appoint an appraiser, and the manner of fixing the amount of rent for the renewed term is made dependent upon joint action of the lessor and lessee. It is not made dependent upon the tenant first appointing an appraiser. In Dannat v. Fuller, 120 N. Y. 554, 24 N. E. 815, it is held that, where one party to a covenant demands a strict performance as to time, he must perform on his part all the conditions requisite to enable the other party to perform his part, and a failure to do so operates as a waiver of the time provision. The lessor never appointed an appraiser, refuses to do so, and never demanded that the lessee appoint one. The facts regarding the attempt of the lessee to appoint an appraiser are as follows: On January 8, 1909, two days before the expiration of the ten days provided for in the lease when the landlord and the tenant were to appoint appraisers, the tenant called at the home of the petitioner and her mother, but found neither of them at home. He did not call again until January 28th, when he saw both mother and daughter, and asked for a renewal, but was told by them that they had not thought of the matter; that there was lots of time; that they were not ready. He called again on February 3d regarding a renewal, and they said the weather did not suit them, that it was too cold, and there was lots of time yet. About a week after he again called, and saw Mrs. Simon, and was again put off with the statement that she would see about it next week. Mrs. Simon had a dower interest in the premises, and was the administratrix of her husband's estate. On February 17th the tenant received a letter from the petitioner, stating:

"My lawyer informs me that you have not come up to the agreement of your lease. You have come too late for a renewal of the lease. For any information, I refer you to my lawyer Mr. Theall."

On March 26th the tenant served on the petitioner a notice that he had appointed an appraiser, and requested the petitioner to appoint one also. No attention was paid to his request. Miss Simon, the peti-

tioner, did not dispute the statement of the tenant as to what occurred when he visited her on these various occasions regarding the renewal. In my opinion the acts and conduct of the petitioner were such as to estop her now from claiming that the lessee has lost his rights, and she cannot gainsay the reasonable inference to be drawn from her words and conduct that the right of forfeiture, if any existed, was waived, and that she extended the time for the appointment of appraisers, nor do I believe that this inference can be overcome by the letter of February 17th, in which she attempts to repudiate this waiver and inference by stating that the tenant has come too late for a renewal. She could have waived or asserted her rights when the tenant called for a renewal. The lease provided for joint action of the contracting parties, so far as the appointment of appraisers was concerned. Her words may fairly be construed as implying and causing the tenant to believe that she did not consider time essential, that she did not wish to appoint an appraiser because she was not ready and would join in the appointment later, or when the weather became warmer. She, as well as the tenant, had agreed to appoint an appraiser between January 1st and 10th, and she did not put the tenant in default by any offer to appoint an appraiser and carry out that part of the agreement which provides that she and the tenant shall and will, within 10 days after January 1st, respectively, appoint an appraiser. This is in my opinion a waiver on her part of the time provision. Dannat v. Fuller, supra.

The neglect in this case was not willful, and there is no evidence in the case that any new rights have intervened, or that the position of the parties has been changed by the delay in appointing appraisers, or that any damage will result from enforcing the right supposed to have become barred; while, if relief is refused, the tenant loses a valuable building (Giles v. Austin, 62 N. Y. 486, 493), and as time was not of the essence of the contract, by its terms, I am of the opinion that a court of equity upon a consideration of all the facts and circumstances and in the exercise of its sound discretion would decide that the tenant should be relieved and that specific performance should not be withheld. In Hubbell v. Von Schoening, 49 N. Y. 326, it was held that a court of equity will not any more than a court of law excuse laches and gross negligence in the assertion of a right to a specific performance of a contract; but where time has not been made of the essence of the contract by its terms, although there may not be performance upon the day, if the delay is excused and the situation of the parties and property unchanged, and the party reasonably vigilant, the court will relieve from the consequences of the delay. The court says (page 331):

"Doubtless a party may be held to a strict performance as to time and put in default for nonperformance—that is, a default in law—and whether equity would relieve would depend on circumstances. But to do this the party seeking to put the other in default must not only be ready and willing to perform, but he must tender performance at the time and demand performance from the other."

The very fact that a party has not strictly performed his part, and so is without remedy at law, is frequently a sufficient reason for the interposition of a court of equity where relief is given, notwithstand-

ing the lapse of time, according to the actual merits of the case. Day v. Hunt, 112 N. Y. 191, 19 N. E. 414. "There must be facts from which it appears that changes have taken place, and circumstances have occurred on account of which it would be inequitable to enforce the performance." Deen v. Milne, 113 N. Y. 303–309, 20 N. E. 861, 863. Having concluded that this court has power to hear and determine the equitable defense set up by the tenant, and finding that he has established a case entitling him to a renewal, and under the authorities the tenant being entitled to retain the possession of the premises until the covenant shall be performed by the lessor, and this court having the power to determine that the tenant has the present right of possession (Quinn v. Quinn, 46 App. Div. 241, 61 N. Y. Supp. 684; People ex rel. Baldwin v. Goldfogle, 23 Civ. Proc. R. 417, 30 N. Y. Supp. 296), the question presents itself as to the form of the judgment or order. The issues having been litigated and the tenant having sustained his equitable defense, a mere dismissal of the petition would leave the question open whether it was dismissed because the tenant had succeeded in his defense, or for the landlord's failure of proof, and the rights of the parties would be open for a new or further contention. A dismissal would not prevent the petitioner from again commencing proceedings.

No provision is made in the Municipal Court act for dismissing a summary proceeding on the merits, or for judgment for the tenant on the merits. Section 249 (Laws 1902, p. 1561, c. 580) provides for a judgment dismissing an action on the merits where the court is of the opinion that the plaintiff is not entitled to recover as a matter of law, and this section would not apply to this proceeding. People v. Hamilton, 39 N. Y. 107. The only provision for a determination of a summary proceeding is that there must be a final order (section 2249); and in Wulff v. Cilento, 28 Misc. Rep. 551, 59 N. Y. Supp. 525, this has been construed to mean that the final disposition of such a proceeding, whether tried by the court with or without a jury, is limited to a final order awarding possession to the petitioner, or to the answering person, as the case may be. See, also, Steuerwald v. Jackson, 123 App. Div. 569, 108 N. Y. Supp. 41; Dickinson v. Brown, 50 Misc. Rep. 640, 98 N. Y. Supp. 694.

An order has therefore been made awarding the possession of the premises to the respondent, with disbursements not to exceed $10, besides the fees of witnesses, if any, attending from another county. Cohen v. Melle, 43 Misc. Rep. 79, 86 N. Y. Supp. 514.