Manning, J.
The facts are stipulated, not disputed, and the record presents but a question of law affecting the proper construction of a clause in a certain lease made between the parties, and dated October 7, 1918. The clause in question is as follows: “ That the said tenant shall notify the said landlord one month before the expiration of the term, if he desires to renew the lease.”
The landlords claim that the tenant is not entitled to a renewal under the foregoing clause, while thfe tenant asserts that the clause in question gives him the right to a renewal for the period of one year.
In determining the validity of the clause in question, it will be important to bear in mind the relations existing between the parties at the time of the making of the lease, as well as the relations which existed between them for some time prior to the making of the lease in question, so that each and every surrounding fact and circumstance may have its proper weight and bearing in solving the problem as to just what the *205 intention of the parties was when the clause in question was written into the lease.
It appears that on or about October 1,1916, the same landlords rented the premises to the present tenant for one year with the privilege of renewal for one year, the rent reserved being sixty-five dollars per month and the water tax; the tenant to have an option to purchase the premises at a stipulated price. On October 1, 1917, it appears that the tenant renewed the lease, the renewal period expiring October 1, 1918. On October 7, 1918, another lease was executed, and it is in this document that the clause above quoted is contained. On August 5, 1919, the tenant notified the landlords by letter that in accordance with the terms of the lease, he elected to continue his tenancy for another year, beginning October 1, 1919. On August 15, 1919, the landlords notified the tenant that possession of the premises would be expected on October 1, 1919; and thereafter the tenant tendered the rent for October, 1919, which the landlords refused to accept. The landlords then began proceedings to dispossess the tenant, as in summary proceedings. The tenant answered, and set up an affirmative defense under section 2244 of the Code, insisting that the lease which the landlords claimed had expired on September 30, 1919, by its terms granted to the tenant an option to renew, which option the tenant had exercised. The tenant get up as a further equitable defense that the landlords had promised and agreed to give him a lease similar in all respects to the one under which he went into possession in October, 1916. On the trial the facts were stipulated, and the question left to the trial court was as follows: Do the words in the lease “ that the said tenant shall notify the said landlord one month before the expiration of the term if he desires to renew the lease ” grant the tenant an option to renew which *206 the landlords must accede to, having received a notice of election to renew? If the answer is “ yes,” the judgment is to be for the tenant. If the answer is “ no,” the judgment is to be for the landlords.
The court below decided the controversy in favor of the tenant, and from such determination the landlords appeal.
The appellants contend that lacking, as it does, the words “ covenant,” “ grant,” “ option,” “ refusal,” or " privilege, ’ ’ the clause in question is a mere statement that the tenant shall notify the landlords thirty days in advance, if he wants to remain in the premises; and they claim that it is elementary law that “ a landlord is not bound to renew a lease without an express covenant to do so,” citing McAdam on Landlord and Tenant (2d ed. p. 254). This same authority, however, says that no particular form of words is necessary to constitute a covenant for renewal, and the general rule for the construction of leases is, that they must be construed most favorably to the lessee; and this especially when the clause to be construed is claimed to be one destroying or defeating the estate of the lessee. See Moskowitz v. Diringen, 48 Misc. Rep. 543.
The appellants make the point that the tenant does not covenant to renew, and neither do the landlords covenant to renew; that the lease simply provides that the tenant shall notify the landlords if he desires to renew the lease, and there was no obligation, therefore, by the landlords to grant such renewal. The appellants also raise the question of the right of the court below to grant what they call “ equitable relief ” to the tenant. They say that the tenant wants the lease renewed for one year, and that the landlords have refused to concede such renewal; that there are no words of demise in the lease for that additional *207 year; that if the tenant feels he is entitled to a renewal for such additional year, his remedy is to go into a court of equity and commence an action for specific performance.
So far as the latter point is concerned, the appellants are clearly in error, for the Municipal Court has ample power to entertain an equitable defense. Section 2244 of the Code expressly provides that at the time of the return of the precept: “Any person in possession or claiming possession of the premises, or a part thereof, may answer, orally or in writing, denying generally the allegations, or specifically any material allegation of the petition, or setting forth a statement of any new matter constituting a legal or equitable defense, or counterclaim.” See Montant v. Moore, 61 Misc. Rep. 45; Simon v. Schmitt, 118 N. Y. Supp. 326.
While, of course, the Municipal Court cannot grant affirmative relief, it can, in entertaining an equitable defense, go as fully as a court of equity can go into all the facts attending the making of the lease, to open the door to all the equitable defenses; and if it finds that the tenant is equitably entitled to a renewal of the lease, it can dismiss the proceedings and direct judgment awarding possession of the premises to the defendant. In the case of Hausauer v. Dahlman, 72 Hun, 607, the court held: “ It is a complete defense to summary proceedings commenced at the termination of a lease for a year that defendant availed himself of a provision of the lease, giving him the privilege of renewing the lease for four years, by giving notice of intention, as the notice of itself creates the new term. Such a defense is not an equitable one, and therefore a municipal court can take cognizance of it.”
Nothing remains, therefore, in the case but a disposi *208 tion by us as to the proper construction to be placed upon the words set forth in the lease itself, and to determine whether the words in question created a covenant to renew, which was binding, both upon the landlords and the tenant.
The lease in question is upon a printed form known as the ‘ ‘ Gilsey Form. ” It is partly printed and partly typewritten; it contains a number of mutual covenants, some thirteen in all, and the words under construction by us.appear to have been specially incorporated into the lease, in typewriting, in a blank space between the 7th and 8th paragraphs of the lease in question. The clause immediately follows the covenant on the part of the tenant wherein he agrees to allow the landlords permission to show the premises to persons wishing to hire or purchase the same, and wherein the tenant further agrees that on or before the 1st of September, 1919, the landlords or their agent shall have the right to put up signs “to let ” or “ for sale ” upon the property. Then follows the clause under discussion.
As I look upon this proposition, the pertinent and cardinal questions to be asked here are: What is the meaning of the clause in question, and why was it thus put in the agreement under consideration? If it does not mean that this tenant was to have the option of the renewal of the lease for one year, upon his giving one month’s notice, what does it mean, and why was such a clause put into the lease at all? If it is to be given the construction claimed for it by the appellants, then the phraseology is absolutely meaningless. And my deduction is that, taking into consideration the situation of the parties, their relationship to each other and other outstanding features of this controversy, and applying the well-known canons of construction to contracts of this nature, it clearly can be held that the tenant is given the privilege of a renewal of this lease *209 for one year upon Ms giving the landlords thirty days’ notice. Any other construction would be repugnant to common sense. There are many cases in the books, but none that I can find with the precise phraseology of this case; the decisions of the court, however, as I read them, are to the effect that whatever ambiguity there may be in the words of the covenant, the intention of the parties absolutely must prevail; and this, even though the intention of the parties is in opposition to the strict letter of the contract, when such intention is clearly ascertained. As courts have said in construing certain of these covenants, more apt language might have been used, but the intent is clear and must prevail. See Tracy v. Albany Exchange Co., 7 N. Y. 472; Crawford v. Kastner, 26 Hun, 440; Mack v. Patchin, 29 How. Pr. 20; Western Transportation Co. v. Lansing, 49 N. Y. 499; Western New York v. Rea, 83 App. Div. 576; House v. Burr, 24 Barb. 525.
That construction should be given to the instrument which gives life and vitality as far as possible to each and every provision thereof; and the legal presumption goes further in holding that no provision is uselessly inserted in a contract, and that so far as renewal provisions in leases are concerned, whether they provide for “ privileges,” “ options,” “ refusals,” or “ notices ” of intention or desire to renew, the giving of notice that the tenant desires to avail himself of the privilege obligates the landlord, and the lease becomes thereby extended.
The present lease was prepared by the landlords and was tendered to the tenant, and hence, under all known principles of construction, it must be construed, if its meaning is doubtful, most strongly against the landlords. A clause capable of two different interpretations should be construed in the sense which will have some operation. An instrument should be construed *210 most strongly against the party who drew it; and should be given the meaning he ought reasonably have understood that the person to whom he. delivered the instrument should put upon it. Bank of Montreal v. Recknagel, 109 N. Y. 482; Moran v. Standard Oil Co., 211 id. 187.
The landlords not only drew the lease, but they acted in connection therewith as if it were identical with the lease executed in 1916, and hence the practical interpretation placed upon the contract by the parties thereto is not only entitled to great weight as to its meaning, but where the meaning is doubtful such conduct is conclusive. City of New York v. New York Refrigerating Const. Co., 8 Misc. Rep. 61; Sattler v. Hallock, 160 N. Y. 291.
In the present case the facts show that the landlords and the tenant evidently believed that the lease was identical in its terms with the old lease; and that is made apparent by the fact that, although the new lease does not require the tenant to pay the Avater tax, or give him the option to buy the premises, the landlords sent him the Avater bills for 1918-1919, and the tenant paid them. In other words, until June, 1919, the landlords, as well as the tenant, acted as if the new lease corresponded in terms with the old.
Clark and Kelby, JJ., concur.
Judgment affirmed, with twenty-five dollars costs.